ROBERT S. CUTTING, Jr., as Receiver, etc., Appellant. *v.*
THOMAS S. MARLOR, Respondent.

Defendant, as collateral security for a loan made to him by a bank, delivered
to it certain securities, which were taken and converted by B., the presi-
dent of the bank. In an action by the receiver of the bank to recover
the amount loaned it appeared and was found that the trustees of the
bank left the entire management of it with B. and one O., who was
styled "manager;" that the trustees took the statement of B. without
question or examination; that the securities were taken without objection
on the part of the trustees or officers; that no meetings of the trustees
were held pursuant to the by-laws, or examination made by them of the
securities, and they exercised no care or vigilance in regard to them;
also, that B. had been in the habit of abstracting securities and using
them in his private business, most of them being returned when called
for; that O. had knowledge of this habit and took no means to prevent
it, or to notify the trustees. *Held*, that the bank was chargeable with
negligence, and defendant was entitled to counter-claim the value of the
securities; that the bailment was for mutual benefit, and in such case
the bailee was bound at least to exercise ordinary care; also, that the
bank was under an implied obligation by the transaction to return the
securities when the debt was paid; that the failure to do so rendered it
presumptively liable, and the *onus* was upon it to relieve itself from that;
also, *held*, that the bank was not excused, by the fact that B. having access
to the securities might have abstracted them secretly, although the
utmost vigilance had been used, as the point was whether care or dili-
gence would have prevented what was actually done.

*Foster* v. *Essex Bank* (17 Mass., 479); *Jenkins* v. *Bank of Bowdoinham*
(58 Me., 275); *Giblin* v. *McMullen* (L. R. [2 P. C. Appeals], 318);
*Scott* v. *Bank of Cherry Valley* (12 Penn., 471), distinguished.

(Argued September 26, 1879; decided November 11, 1879.)

APPEAL from judgment of the General Term of the
Supreme Court, in the first judicial department, affirming a
judgment in favor of defendant, entered upon a decision of
the court on trial without a jury. (Reported below, 17
Hun, 573.)

The nature of the action and the facts are set forth suffi-
ciently in the opinion.

*John Clinton Gray*, for receiver, appellant. The law of
pledge must govern this case. (*Markham* v. *Jandon*, 41

N. Y., 242; *Coggs* v. *Bernard,* 2 Ld. Raym., 915; Coke Litt., 89*a ;* 4 Cow., 836; Story on Bailments, 333–338; *Jenkins* v. *Nat. Village Bank,* 58 Me., 275; Story on Bailments, 197; 2 Kent's Com., 579.) Proof of some negligence, which was not the proximate cause of Bonner's felonious act, is not sufficient to impose a legal liability to pay to the defendant the value of his securities. (*Ex parte Swan,* 2 Hurls. & Colt. [Exch.]; *Foster* v. *Essex Bank,* 17 Mass., 479; *Scott* v. *Nat. Bank,* 72 Penn., 471.) The action of the trustees was not such negligence as would entitle defendant to the relief demanded. (*Foster* v. *Essex Bank,* 17 Mass., 479; *Giblin* v. *McMullen,* L. R. [2 P. C. Cases], 318; *Scott* v. *Nat. Bank,* 72 Penn., 471; *Schmidt* v. *Blood,* 9 Wend., 268; *First Nat. Bank Lyons* v. *Ocean Bank,* 60 N. Y., 278; *Prest., etc., Mech. Bank* v. *N. Y., etc., R. R. Co.,* 13 id., 599; *Thompson* v. *Sixpenny Savings Bank,* 5 Bosw., 294.) The burden of proving that the loss occurred through the default or act of the trustees or directors is upon defendant Marlor. (Story on Bailments, § 339; *Foster* v. *Essex Bank,* 17 Mass., 479.)

*John McKeon,* for stockholders of Bankers and Brokers Association. The Bankers and Brokers' Association was a mere bailee and liable only for ordinary care. (Story on Bailments, § 286; *Coggs* v. *Bernard,* 2 Ld. Raym., 909–913; *Wilson* v. *Little,* 2 Comst., 443; Story on Bailments, §§ 337, 338; Edmunds on Bailments, § 672; 3. J. R., 271, 281; *Foster* v. *Essex Bank,* 17 Mass., 479; *Finncane* v. *Small,* 1 Esp., 315; 2 East [C. L.], 564; 4 J. R., 385; 4 Mass., 680; Story on Bailments, § 67; *Jenkins* v. *Nat. Vil. Bank,* 58 Me., 275; Story on Bail. [9th ed.], § 88; *Giblin* v. *McMullen,* 2 P. C., 327; *First Nat. Bank Lyons* v. *Ocean Nat. Bank,* 60 N. Y., 279.) To warrant a submission of the question of negligence to the jury there must be evidence from which they might reasonably and properly conclude there was negligence. (*Toomey* v. *Lond. and Br. R'way,* 3 C. B. N., 150; Shear. & Redf. on Neg., § 67; Wharton on

Neg., §§ 463, 469; *Scott* v. *Nat. Bank of Chester Valley*, 72 Penn., 472; 81 id., 99.)

*Wm. Henry Arnoux*, for respondent. The deposit of bonds and stock as collateral security to a loan is not a naked deposit, and for such securities the bank is liable as bailee for hire. (*Hall* v. *Warner*, 60 Barb., 198.) In such case the bailee is held to a greater degree of responsibility in the care of the property than where it is a naked deposit. (2 Kent's Comm. [11th ed.], 580; Story on Bailments, § 332; *Maury* v. *Coyle*, 34 Md., 235; *Third Nat. Bk.* v. *Boyd*, 44 id., 47.) Naked bailees are held liable for negligence and want of ordinary care. It is not sufficient to show that a bailee takes the same care of the deposit that he does of his own goods. (Wharton on Negligence, § 462; Story on Bailments, §§ 64 *a*–67; *Doorman* v. *Jenkins*, 2 Adol. & Ell., 256; *Tracy* v. *Wood*, 3 Mason C. C., 132; *Maury* v. *Coyle*, 34 Md., 235; *Lan. Co. Bk.* v. *Smith*, 62 Penn., 48; Waits' Actions and Defenses, 496–497.) In cases of pledge, the pledgee has no right to use the property pledged unless such use would be beneficial to the pledgor or for the good of the property pledged, and even in such case the bailee uses it at his peril. If he uses it, it is a conversion and he is liable therefor. (Wait's Actions and Defenses, 174; 2 Kent's Comm., 578; Story on Bailments, §§ 329, 330; *Coggs* v. *Bernard*, 2 Ld. Raym., 909–917; *Collins* v. *Bennett*, 46 N. Y., 490.) The pledgee must satisfy the court and jury that he has performed his whole duty in the matter to exonerate him. (2 Kent's Comm. [11th ed.], 579–581; Story on Bailments, §§ 338, 339; *Collins* v. *Bennett*, 46 N. Y., 490; *Schwerin* v. *McKie*, 51 N. Y., 180; *Pattison* v. *Syr. Nat. Bk.*, 17 Hun, 419.) The character of the property, its value, the means used to protect it, and all the circumstances, are to be taken into consideration in determining the question of liability in each particular case. (Wharton on Negligence, § 468; Story on Bailments, §§ 338, 339; *Maury* v. *Coyle*, 34 Md., 235; *Third Nat. Bk.* v. *Boyd*,

44 id., 47; *Tracy* v. *Wood*, 3 Mason, 132; *First Nat. Bk. Carlisle* v. *Graham*, 79 Penn. St., 166.) In cases of bailment the same rules apply to corporations as to individuals, and they are subject to the same liabilities. (Ang. & Ames on Corp., § 246; *Blackstock* v. *N. Y. and E. R. R. Co.*, 20 N. Y., 48, 51, 52; *N. Y. and N. H. R. R. Co.* v. *Schuyler*, 34 id., 30; *Pattison* v. *Syr. Nat. Bk.*, 17 Hun, 419; *Booth* v. *F. and M. Bk.*, 50 N. Y., 396–400; *Lee* v. *Sandy Hill*, 40 id., 442–448; Field on Corps., §§ 317, 318, 320–323; Potter on Corps., § 109; Story on Agency, § 452; *E. N. Y. and J. R. R. Co.* v. *Lighthall*, 5 Abb. [N. S.], 458; *Phila., W. and B. R. R. Co.* v. *Quigly*, 21 How. [U. S.], 202.) Where bonds and stock are deposited as collateral security for a loan, the bank is liable for the dishonest acts of its officers where the trustees have been guilty of negligence generally. (*Lan. Co. Bk.* v. *Smith*, 62 Penn., 48; *United Soc'y. Shakers* v. *Underwood*, 9 Bush., 609; S. C., 15 Amer. Rep., 731.) Naked bailees are guilty of gross negligence who retain in office one whose integrity may reasonably be suspected; but even where there is no ground for specially believing a man dishonest, if he is known to be a speculator, to indulge in stock gambling, that alone should disqualify him from holding a place of trust. (*Scott* v. *Nat. Bk. Chester Valley*, 72 Penn., 471; *Gibbons* v. *Mullin*, 2 Privy Council R.) A contract with the president of a corporation binds the company, and any disposition of its personal property, or such property in its custody, is equally binding upon it. (*Van Leuven* v. *First Nat. Bk. Kingston*, 54 N. Y., 671.)

Church, Ch. J. The action is to recover a loan by the Bankers and Brokers' Association, a banking corporation, to the defendant. The defendant admitted and offered to pay the amount of the loan, but demanded certain securities which had been delivered as collateral security, and the plaintiff being unable to deliver them, the defendant seeks to counter-claim the amount of their value in this action.

The securities were taken from the bank by one Bonner, its president, and converted to his own use by hypothecating them in his own business as a stock dealer and broker, and the plaintiff claims that the association is not liable for his acts.

We have carefully examined the questions involved, and the authorities cited, and we do not deem it necessary to enter into an elaborate discussion of them. We concur with the result arrived at by the trial judge that, upon his findings of fact, the corporation is liable for the conversion of the securities in question, and we concur mainly with his opinion. He finds, among other things, that the trustees left the entire management of the association with the president and one Oley, who was styled manager, and who was also a trustee; that the trustees took the statements of Bonner without question or examination, that the securities were taken from the bank without objection or resistance on the part of the trustees or the officers of the institution, that no meetings of the trustees were held pursuant to the by-laws, that no examination was made by the trustees of the securities, and no care or vigilance was used by them in respect to such securities. It also appears that the president had been in the habit of abstracting securities and using them in his private business, for six months prior to the failure of the bank, but that most of the securities had been returned to the bank when called for; that Oley the manager had knowledge of this habit of the president, and took no means to prevent it or notify the other trustees.

The bailment was for the mutual benefit of both parties, and in such a case the bailee is bound to exercise ordinary care at least; and in determining what constitutes such care, the nature and value of the property, and the means of protection possessed by the bailee and the relation of the parties and other circumstances must be considered. The securities were negotiable and valuable, and the corporation possessed ample means of keeping them safely and securely. Besides the association was under an implied obligation or contract

by the transaction itself, to return the securities to the defendant when the debt was paid. The failure to do so, rendered the corporation presumptively liable for conversion. The *onus* was upon it to relieve itself from that liability. (Story on Bailments, § 339.) The trial judge has found expressly that the association did not exercise reasonable diligence in respect to the care and custody of these securities, and we think that the evidence fully justified the finding. The authorities relied upon by the plaintiff's counsel are not applicable to the facts found in this case. *Foster* v. *Essex Bank* (17 Mass., 479) was the case of gratuitous bailment upon a special deposit of a quantity of gold.

The rule of liability in such a case is quite different, and is condensed in the syllabus as follows : "A mere depositary without any special undertaking, and without reward, is not answerable for the loss of the goods deposited, but in case of gross negligence, which is equivalent to fraud in its effect upon contracts."

No fault or negligence was shown, on the part of the bank. The gold was feloniously taken by the cashier. In *Jenkins* v. *Bank of Bowdoinham* (58 Me., 275), the only question decided was whether the receipt stating that the securities were to be returned upon the payment of the debt, increased the common law liability of the bank, and it was held that it did not. In that case the securities were stolen by a burglar, and the action was not based upon fault or negligence.

*Giblin* v. *McMullen* (L. R. [2 P. C. Appeals], 318, was like the case of *Foster* v. *Essex Bank* (*supra*), which it cites, and the point of the decision is that a depositary of a special deposit is not liable for the felony of an employee, without fault on his part.

*Scott* v. *Bank of Cherry Valley* (12 Penn. St., 471), holds the same doctrine. These are the principal authorities relied upon by the plaintiff. It will be observed that *Foster* v. *Essex Bank*, *Giblin* v. *McMullen* and *Scott* v. *Cherry Valley Bank*, were cases of special deposit without contract or reward. With the doctrine of these cases no fault can be

found. If a loss occurs even through the larceny of agents or employees, the depositary is not liable unless gross negligence is shown. The distinction between those cases and this, is manifest. This was not a special deposit. The corporation occupied at least the position of bailee for hire, and was under obligation to exercise at least ordinary care. The finding that such care was not exercised was justified by the evidence. Bonner was a notorious dealer and speculator in stocks. He had been engaged for many months in abstracting securities held by the bank for his private purposes, and he had done this not secretly, but openly and publicly. The manager who was also a trustee knew that these acts were being done, and it is difficult to see why his knowledge and neglect are not imputable to the corporation itself. If all the trustees or a majority had known of these transactions, and had not at once removed Bonner, or prevented their recurrence, they would have been guilty of culpable deriliction of duty. A corporation is represented by its trustees and managers ; their acts are its acts, and their neglect its neglect. The employment of agents of good character does not discharge their whole duty. It is misconduct not to do this, but in addition they are required to exercise such supervision and vigilance as a discreet person would exercise over his own affairs. The bank might not be liable for a single act of fraud or crime on the part of an officer or agent, while it would be for a continuous course of fraudulent practice, especially those so openly committed and easily detected as these are shown to have been. Here were no supervision, no meetings, no examination, no inquiry. There was actual knowledge on the part of the managing trustee, and his silence and inaction without adopting any measures of prevention amounted to acquiescence in the wrong, and it would not be a strained inference from the business of Bonner, and the publicity of the acts, and other circumstances, that the other trustees either had reason to suspect what was going on, or if not that they were grossly negligent of their duties. We concur with the learned trial judge, "that a

system of management of a banking house, in which such conduct of its officers was permitted, was a breach of duty, and grossly negligent towards its dealers, and persons having stocks and bonds in its keeping."

It is argued that the negligence shown was not the proximate cause of the loss, and that with the utmost vigilance it would have been possible for the president who had access to the vault, to have abstracted the securities. This may be true, but the position is not tenable. The exercise of ordinary care would have discovered the wrongful practices, because they were not secret, and were actually known to the managing trustee, and if known, the trustees had the power, and it would have been their duty to have effectually prevented it, and the presumption is that they would have done so. The negligence related to the cause of the loss, viz. : the abstraction of collaterals for private use, which ordinary vigilance would have discovered and prevented. This is unlike the negligence urged in the *Scott Case* (*supra*). There it seems that the teller's accounts were fraudulently kept, and had been for two years, and the court held that the bank owed no duty to examine the teller's accounts for the benefit of a gratuitous special bailment. Here there was a duty owing to the defendant to safely keep the securities, and the exercise of care, points directly to the prevention of the fraudulent acts of Bonner in respect to this duty. It is no answer to say that he might have done the same thing secretly. It could as well be said that he might have done it by a burglary or other crime. The point is whether care and vigilance would have prevented what was done. It is said that this is a hard case for the stockholders who have also been robbed by the acts of Bonner. This is doubtless true. It is a question as to which among innocent persons is to bear the loss of fraud and crime. The stockholders established an institution, chose their officers, and invited the public to deal with them. The defendant was a dealer, and had a right to rely upon the vigilance and good faith of those whom the stockholders had entrusted with the management

of the corporation, and while regretting the common misfortune we think under the circumstances of this case as proved and found, that both upon legal and equitable principles, the position of the defendant is superior to that of the stockholders.

The judgment must be affirmed.

All concur.

Judgment affirmed.