JOHN T. WILLETS et al., Respondents, v. ORINAL C. HATCH, Appellant.

While it is the duty of a creditor to whom property has been delivered as security for a debt, to use ordinary care for its protection and preservation, in determining what constitutes such care, the nature and value of the property and the means of protection possessed by the bailee, the relation of the parties and other circumstances must be considered.

Defendant indorsed and delivered to plaintiffs a warehouse receipt for certain wet salted calf skins as security for a call loan. In an action to recover on the loan defendant sought to counter-claim damages resulting from a deterioration of the calf skins while in the warehouse, alleged to have been caused by plaintiffs' neglect to care for them. It appeared that plaintiffs gave no personal attention to the skins while in the warehouse and exercised no supervision over them; that defendant had free access to them and frequently went to the warehouse and examined them. The skins were all piled together and the injury was caused by the heating of those in the center of the pile; this did not appear upon the surface of the pile. When defendant discovered that the skins were injured he called plaintiffs' attention to it and advised that they be resalted or tanned; plaintiffs declined to do either; defendant also proposed to take them to his own warehouse and treat them. Plaintiffs did not consent, but suggested that defendant pay the debt and take the skins. *Held*, that while the legal title to the property was vested in plaintiffs and the warehousemen were their bailees, defendant had at least an equal interest in the preservation of the property, the bailment being for the mutual benefit of the parties, and no duty devolved upon the former to cause it to be handled over and inspected; that plaintiffs were not required to permit defendant to take it to his own warehouse, and whether, under the circumstances, it was their duty

to take some action for its preservation after being advised of its deterioration, for neglect to perform which they were liable, was properly submitted to the jury.

(Argued January 25, 1892; decided March 8, 1892.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made May 9, 1890, which affirmed a judgment in favor of plaintiffs entered upon a verdict, and affirmed an order denying a motion for a new trial.

In July, 1886, the plaintiffs loaned to the defendant $2,400. At the time the application was made for the loan, the defendant had recently imported from Ireland a quantity of wet salted calf skins, which were then on board a vessel in New York harbor. He offered them as collateral security. The skins, by the understanding of the parties, were taken by the defendant to the warehouse of Shultz, Innes & Co., their receipt delivered to him, who indorsed and delivered it to the plaintiffs. This action was brought in August, 1888, to recover the balance alleged to be due the plaintiffs on account of the loan. The defendant, by way of counter-claim, alleged that, by the fault and neglect of the plaintiffs, the calf skins became greatly impaired in condition and value, and that as the consequence the defendant sustained damages, for the amount of which he demanded relief. There was no abatement of the plaintiffs' recovery by reason of the alleged counter-claim.

Further facts are stated in the opinion.

*John McDonald* for appellant. There was no conflicting evidence upon any material fact. The single question presented to the trial court for solution was, therefore, one of law, and it was error to submit that question to the jury. (*Tabor* v. *Hopkins*, 4 N. Y. 548; *Pratt* v. *Hull*, 13 Johns. 334; *Sheldon* v. *A. F. & M. Ins. Co.*, 26 N. Y. 465; *Edgell* v. *Hart*, 9 id. 217; *Ernst* v. *H. R. R. R. Co.*, 24 How. Pr. 103; *Groat* v. *Gile*, 51 N. Y. 441.) The indorsement and delivery of the warehouse receipt by the defendant to the plaintiffs had precisely the same legal effect, and imposed

upon the plaintiffs the same duties and responsibility as if the skins themselves had been delivered bodily into their hands. (Story on Sales, §§ 311, 312; 2 Kent's Comm. 500; Benjamin on Sales, §§ 1043, 1044; 1 Pars. on Cont. 531; *Hayden* v. *Demet*, 53 N. Y. 429; *Gregory* v. *Wendell*, 39 Mich. 340; *Wilkes* v. *Ferris*, 5 Johns. 343; *Davis* v. *Green*, 24 N. Y. 643; *Burton* v. *Curyea*, 40 Ill. 320; *Padden* v. *Taylor*, 44 N. Y. 375; *Horr* v. *Barker*, 8 Cal. 614; *Hatch* v. *Bailey*, 12 Cush. 29; *McCormick* v. *Hadden*, 37 Ill. 379; *Whitlock* v. *Hoag*, 58 N. Y. 487; *Davis* v. *N. E. Bank*, 91 U. S. 633; *Barber* v. *Meyerstein*, L. R. [4 H. L.] 317; *Markham* v. *Jandon*, 41 N. Y. 241; *Wheeler* v. *Neubold*, 16 id. 396; *Stief* v. *Hart*, 1 id. 39; *Bank of Rochester* v. *Jones*, 4 id. 507; *Gibbons* v. *Stevens*, 8 How. [U. S.] 384; *Yenni* v. *McNamee*, 45 N. Y. 621.) The plaintiffs, thus having the legal title and the actual possession of the skins, were bound to ordinary diligence in the care and preservation of them and, as they did not use ordinary diligence in the care and preservation thereof, they must answer to the defendant for the consequent loss inflicted upon him by their negligence. (*Cutting* v. *Marlor*, 78 N. Y. 454; *St. Losky* v. *Davidson*, 6 Cal. 647; 2 Story on Bailments, §§ 11, 17, 332, 341, 496; 2 Pars. on Cont. 110; Jones on Pledges, §§ 403, 405, 409, 412; Edwards on Bailments, §§ 235, 296; *G. F. & M. Ins. Co.* v. *Marr*, 46 Penn. St. 504; *Hanna* v. *Holton*, 78 id. 336; *Russell* v. *Hester*, 10 Ala. 535; *Slevin* v. *Morrow*, 4 Ind. 425; *Cardin* v. *Stone*, 23 Ga. 181; *Lawrence* v. *McCalmont*, 2 How. [U. S.] 454.)

*Wilson M. Powell* for respondents.

BRADLEY, J. The controversy at the trial had relation to the defendant's claim for damages arising from the deterioration of the calf skins during the time they were in the warehouse of Schultz, Innes & Co. They were placed there by the defendant in July, 1886, where they remained until in July, 1887, when they were found to be in such an impaired condition as to have but little value. The number of these skins

was 2,748. They were contained in 458 bundles, all in one pile, the inside of which had become heated, and the skins there were in the process of decay.

The question presented at the trial was whether or not this condition and the consequent loss were chargeable to the failure of the plaintiffs to perform any duty assumed by or imposed upon them when they, as collateral for their loan to defendant, received from him the warehouse receipt and the right of property represented by it. There was not any substantial dispute about the facts, and the defendant insisted that the plaintiffs were chargeable with the loss resulting from the injury to the property of which they held the receipt. And this charge is founded upon the proposition that during that time they had the legal title to and the possession of the skins. They did have the legal title, and the indorsement and delivery of the warehouse receipt was a symbolical or constructive delivery of the possession of the goods to the plaintiffs. (2 Kent's Com. 500 ; *Wilkes* v. *Ferris*, 5 Johns. 335 ; *Gibson* v. *Stevens*, 8 How. [U. S.] 384, 399.) The effect is similar to that given to the delivery of or transfer for such purpose of á bill of lading. This vests the title, and in support of it in like manner transfers the possession of the goods represented by the bill. (*First National Bank of Cincinnati* v. *Kelly*, 57 N. Y. 34 ; *Marine Bank* v. *Fiske*, 71 id. 353 ; *Commercial Bank* v. *Pfeiffer*, 108 id. 242.) And this may be accomplished although the property is remote from the place at which the transaction occurs, and such documentary evidence of title is delivered and taken. In the eye of the law, the person to whom the warehouse receipt of bill of lading is properly delivered or transferred for such purpose, takes the possession of the goods covered by it. Both parties to the transaction, when the transfer is so made as collateral security, have an interest in the goods and in their preservation. The one has the legal title in support of his special property in them, and the equitable interest of the other is for the purpose of satisfying his debt; and in view of any surplus which may remain in the event of their appropriation to such

purpose.   When the warehouse receipt was indorsed and delivered to the plaintiffs, it evidently was contemplated that the skins should remain where they were until the debt should be paid.   And in the meantime there was not, nor could properly be, any obstruction to the defendant's access to them for the purposes of negotiating a sale of the skins with a view to realize funds for the payment of the debt, or do anything not inconsistent with the rights of the plaintiffs.   This the defendant understood, and as often as weekly, except a small portion of the time when he was physically unable to do so, went into the warehouse, examined the skins as much as he pleased, and from time to time was there with persons to whom he sought to make sale of them.   The plaintiffs gave no personal attention to the property.   They did not see the skins before they were taken to, nor while they were at the warehouse of Schultz, Innes & Co.   Nor did they exercise any supervision over them.   They relied solely upon their possession of the receipt for the protection of the security furnished by the property.

The defendant's counsel contends that the plaintiffs were charged with the duty of exercising care which they negligently failed to bestow for the preservation of the property from deterioration.   And it was in that view that the court was requested to direct the jury to find for the plaintiffs such amount only, as remained of their claim after deducting therefrom $1,703.75, the amount of the alleged counter-claim. This the court declined and charged the jury to the effect that while a pledgee is chargeable with ordinary care, what constitutes such care is dependent upon circumstances, and submitted to them the question whether under the circumstances in the present case the plaintiffs failed to exercise the care assumed by, or which was due from them in that respect. Upon the refusal to charge as requested and to the instruction given exceptions were taken.   And the court also charged that if the plaintiffs had taken the goods into their own custody they would have been chargeable for the damages.   The loan was made to the defendant for no definite time.   It was subject to call by the plaintiffs and to payment at any time by the

defendant. The latter resided in the city and it evidently was contemplated that he would negotiate a sale of the skins, which he ineffectually sought to do. They were accessible to and frequently seen by him. His interest in their preservation was at least equal to that of the plaintiffs. The latter were not advised how long the payment of the debt would be delayed and the property remain in store. For aught they knew, their relation to the property might any day be terminated by the satisfaction of their claim. It cannot under the circumstances be assumed that the plaintiffs were required to cause the property to be handled over and inspected, nor that any such undertaking on their part was within the contemplation of the parties. There is no question about the duty of a creditor who has become bailee of property transferred to and taken possession of by him as security, to use ordinary care for its protection and preservation, but as said in *Cutting* v. *Marlow* (78 N. Y. 458), "in determining what constitutes such care the nature and value of the property and the means of protection possessed by the bailee and the relation of the parties and other circumstances, must be considered." If the plaintiffs had taken the actual custody of this property and assumed the exclusive dominion over it, a different question than is now presented may have arisen. And such was the nature of the cases to which our attention is called by the defendant's counsel. (2 Kent's Com. 587; *Wheeler* v. *Newbould*, 16 N. Y. 392; *G. F. & M. Ins. Co.* v. *Marr*, 46 Penn. St. 504; *Hanna* v. *Holton*, 78 id. 334.) But that was not the situation nor so treated in the present case. The plaintiffs held the warehouse receipt, and had the legal rights which it afforded. The warehousemen were in that sense their bailees, but the bailment was, nevertheless, for the mutual benefit of the parties, and the defendant was at liberty to terminate at any time the plaintiffs' relation to the property by payment of the debt, and in the meantime it was subject to his inspection. The plaintiffs could not foresee any day that the receipt may not have been taken up by the defendant the following day. Then it seems that the surface appearance of the

skins to observation was not such as to disclose the condition of those within and at the bottom of the pile. And although the defendant frequently examined them he failed to discover any impairment of the skins until about the 1st of June, 1887. The evidence tends to prove that he thereafter called the attention of the plaintiffs to the subject, and advised them that the skins should be resalted or tanned and suggested to them that they send them away to be tanned on their account, which they declined to do; that the defendant also proposed to take them to his own storehouse and there treat them. The plaintiffs did not consent to this, but suggested that he pay the debt and do what he pleased with the property. It does not appear that the defendant designated any place other than his storehouse to take it. In July they were, with the consent of the plaintiffs, removed to their storehouse by the defendant, who there sought to improve the condition of the skins and to stay the progress of decay or disintegration, but apparently without much success; and they were finally sold for a small sum. When the attention of the plaintiffs was first called to this condition of the skins if they unreasonably denied to the defendant the opportunity to do that which may have relieved the property from further injury or tended to its preservation to any extent, they would have been chargeable with the consequences which followed. It is quite evident that at that time a considerable portion of the skins was in an irreparable condition, at least such inference is permitted, although it may not have then been so understood by the defendant. And to what extent they afterwards and before the removal to the plaintiffs' warehouse were further affected does not appear. But the plaintiffs were not required to permit the defendant to take them to his own warehouse. This would have been a restoration of the actual possession of the property to him, and as against his creditor or *bona fide* purchasers from him it may have rendered the plaintiffs' security ineffectual. (*Yenni* v. *McNamee,* 45 N. Y. 614; *Farmers & M. Natl. Bk.* v. *Lang,* 87 id. 209.) And whether under the circumstances it was the duty of the plaintiffs to take some action for the preservation

of the property after they were advised of the fact of its deterioration, and whether they were chargeable with negligence in that respect were questions properly submitted to the jury; and there was no error in the modification as made of the request to charge in that respect. The proposition which the defendant asserts in support of his claim is upon the assumption that the plaintiffs had the actual and exclusive possession of the property, and, therefore, assumed and were charged with the duty of exercising care to ascertain its condition and for its protection and preservation from injury from natural inherent causes arising from the situation in which it was in the warehouse where the defendant had so placed it. But the case as presented by the evidence was not necessarily that so assumed by the defense as has been already observed. While the plaintiffs had the right as against the defendant to have the property remain there, the opportunity of the latter to inspect the property and exhibit it for sale at his pleasure was not abridged. And it seems he took occasion to give the skins frequent attention. His interest was such as to naturally and reasonably actuate him to do so. And when occasion required the removal of the property from that warehouse it was taken by him to the plaintiffs' premises where it continued to have his care and supervision no less than before. It cannot as matter of law properly be said that although the defendant who frequently saw them, did not, the plaintiffs ought to have apprehended and by investigation discovered the degenerating process going on at the bottom and in the interior of the mass of skins before it was ascertained by the defendant. In view of the relation actually and practically assumed by the parties to the property and of its place of storage and situation, the court properly refused to direct the verdict as requested, and in submitting questions of fact to the jury charged as favorably to the defendant as he was fairly entitled. None of the exceptions seem to have been well taken.

The judgment should be affirmed.

All concur, except VANN, J., not voting.

Judgment affirmed.