Bank v. Hays.

THIRD NATIONAL BANK OF ST. LOUIS *v.* W. P. HAYS *et al.*

(*Knoxville.* September Term, 1907.)

1. **BILLS AND NOTES.** Purchaser of draft with bill of lading attached is vested with special property in the goods becoming absolute on drawee's refusal to pay.

When the seller and shipper of property contracted to be sold consigns the same to his order with instructions to the common carrier to notify the proposed purchaser at the destination of the shipment, and for the purchase price draws on the purchaser of the property a draft payable to the bank or person purchasing the same, to which draft is attached the bill of lading indorsed in due course, a special property in the goods embraced in the bill of lading passes to the said payee and purchaser of the draft, subject to be divested by the acceptance and payment of the draft, and on the drawee's refusal to accept and pay the draft, the title of the holder of the draft becomes absolute. (*Post, pp.* 731-738.)

Cases cited and approved: Means v. Bank, 146 U. S., 620, with its numerous citations shown on pages 737 and 738, and numerous other cases cited on pages 736 and 738.

2. **BILLS OF LADING.** Holder is entitled to property embraced therein against all subsequently acquired liens.

The delivery of a bill of lading is a symbolic delivery of the property which it represents, and the holder of a bill of lading has constructive possession of the property embraced therein, and may hold it against all persons acquiring liens subsequent to the transfer of the bill of lading. (*Post, pp.* 738-742.)

Cases cited and approved: Ochs v. Price, 6 Heisk., 488, 487, (citing Curry v. Roulstone, 2 Overt., 110; Kirkman v. Bank, 2 Cold., 403); Cornick v. Richards, 3 Lea, 25; Lewis v. Small, 117 Tenn., 155; Bank v. Bank, 91 U. S., 98.

Cases cited and distinguished: Saunders v. Bartlett, 12 Heisk., 316 (citing Woodruff v. Railroad, 2 Head, 94); Oliver v. Moore, 12 Heisk., 482.

3.  **SAME.**  Case in judgment involving questions in both of the foregoing headnotes.

The seller and shipper of property contracted to be sold consigned the same to his own order with instructions to the common carrier to notify the proposed purchaser at the destination of the shipment, and for the purchase price drew on the purchaser of the property a draft payable to the bank purchasing the same, to which draft was attached the bill of lading indorsed in due course.  The draft was purchased by the bank by giving the drawer credit for the net proceeds who checked against that credit in the regular way.  The seller, shipper, and drawer was active in attempting to prevent the diversion of the goods from the claim of the bank to the claim of his subsequently attaching creditors.

Held:  That the bank had a special property in the goods entitling it to maintain the replevin suit and to recover the amount of the draft against the drawee and purchaser who had attached for an alleged previously existing claim in so far as necessary to make one satisfaction of the amount of the draft.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —T. M. MCCONNELL, Chancellor.

CHAMBLISS & CHAMBLISS, for complainant.

RICHMOND, CHAMBERS & COOPER and F. S. YAGER, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This is a replevin bill, brought by the complainant bank to recover the possession of two cars of rye which had been attached as the property of the Young & Fresch Grain Company, a partnership of St. Louis, Mo. The grain in suit had been sold by the grain company to the Chattanooga Feed Company and T. H. Cheek & Co., of Chattanooga.    This grain was attached on its arrival in Chattanooga by the firm of T. H. Cheek & Co. to satisfy an alleged indebtedness against said nonresident grain company.    The Third National Bank of St. Louis, Mo., is asserting its right to the possession of said rye as purchaser of sight drafts drawn by the grain company, to which bills of lading were attached, against the vendee at Chattanooga.

T. H. Cheek & Co., the real party defendant to the bill, filed an answer and cross bill, averring:

"Defendant, on information and belief, denies that complainant purchased of the Young & Fresch Grain Company two certain drafts dated August 24, 1903, one for $570, drawn on the Chattanooga Feed Company, the other for $573, drawn on T. H. Cheek & Co., but admits that such drafts were drawn, with bills of lading attached, calling for two cars of rye referred to in the first paragraph of complainant's bill; but defendant avers and charges, on information and belief, that said drafts, with bills of lading, were simply discounted by said complainant bank to accommodate its customer, the

said Young & Fresch Grain Company, and that said bank is not a *bona fide* purchaser of the drafts, but that the said Young & Fresch Grain Company, a customer and depositor of said bank, is the real party in interest, and is responsible for backing the lawsuit of complainant, and employed and paid counsel in the cause, and indemnified complainant, who is only a nominal party, and not the real owner of the drafts.    It admits that the drafts were forwarded through the mail to Chattanooga for collection, and avers that complainant bank acted as collection agent of said Young & Fresch Grain Company to said defendant, who had instituted the two suits herein referred to, attempting to collect said indebtedness, and attached the grain as the property of said firm on account of said indebtedness, which will more fully hereinafter appear.    Defendant denies that complainant is entitled to or ought to have possession of the rye, and does not know whether the two cars were reasonably worth $1,143, or less, but denies that complainant has either title or lawful rights of possession."

Cheek & Co. then proceeded by the cross bill to set up a claim for damage against the Young & Fresch Grain Company arising out of the purchase of six car loads of corn in May, 1903, and seeking to subject the two car loads of rye attached herein to the satisfaction of said claim for damages.    Proof was taken, and on the final hearing the chancellor, being of opinion that complainant bank was not entitled to the possession

of said two car loads of rye, or to the proceeds arising from its sale, dismissed the bill.    He sustained the cross bill of Cheek & Co., and awarded said firm a decree against the Young & Fresch Grain Company, or rather F. M. Young, the surviving member of said firm, for the sum of $1,446.41, with costs.    The complainant bank appealed, and has assigned errors as follows:

(1)    In dismissing complainant's bill, and in failing to decree the right of possession to the property replevined to be in complainant bank.

(2)    In decreeing that cross-complainants were entitled to the proceeds of the two cars of rye replevined herein.

The facts disclosed in the record are that the Young & Fresch Grain Company, of St. Louis, Mo., consigned to their own order at Chattanooga, Tenn., two car loads of rye, with instructions to the carrier to notify the proposed purchasers, the Chattanooga Feed Company as to one car, and the said T. H. Cheek & Co. as to the other, as shown by the respective bills of lading issued by the carrier.    The grain company drew sight drafts against this rye in favor of the Third National Bank of St. Louis, Mo., and attached thereto the bills of lading for the consignment of rye.    These drafts were purchased by the complainant bank, and said grain company was given credit therefor by the bank, and checked against that credit in the regular way.    According to the weight of the testimony, there was a straight purchase of these drafts by the bank; the drawers thereof

reserving no interest in the property represented by the bills of lading. These sight drafts were sent, with the bills of lading attached, to the Citizens' Bank & Trust Company of Chattanooga for collection. On the arrival of the shipment of rye, it was attached by T. H. Cheek & Co., and impounded to satisfy, an alleged indebtedness growing out of an independent corn transaction.

The question of law arising on the record is in respect of the superiority of the respective claims to the rye or its proceeds, propounded by complainant bank on the one side and the attaching creditor of the grain company on the other. It is said on behalf of Cheek & Co. that "the title to goods does not pass to the purchasers on their delivery on board cars, where the seller consigns them to his own order at the place of final delivery."

It is said the grain company both reserved and exercised the *jus disponendi* over said rye, and that at the time it was attached it was the property of the nonresident grain company, and therefore subject to be impounded for the satisfaction of an indebtedness due Cheek & Co.

It is said on behalf of the defendant that the discount of said drafts at St. Louis created no lien on the shipment of rye, and that complainant bank was simply a creditor at St. Louis of the grain company, with no rights superior to Cheek, who was a creditor at Chattanooga. The argument is that the property in the

rye, when shipped, remained in the grain company, and it was then simply a race between the two creditors to fix a lien or acquire the actual possession of the rye. It is then said that defendants Cheek & Co. caused their attachment to be levied, and thus fixed a lien on the property before complainant bank ever acquired actual possession under its bill of lading.

In this contention we do not concur.   In 6 Cyc., p. 426, it is said:   "If the bill of lading is accompanied by draft on the consignee, and there is some reservation in the bill of lading of *jus disponendi*, the consignee does not become entitled to the possession of the goods until he accepts or pays the drafts in accordance with the terms imposed by the shipper; and an intermediate party, such as a banker purchasing the draft accompanied with the bill of lading, has a right to the goods as security until the consignee accepts or pays as the case may be.   Such a transaction passes to the transferee of the draft and bill of lading a special title in the goods, and he has a better right thereto than one claiming under a prior or subsequent agreement with the shipper, but without having obtained actual or constructive possession of the goods."

In 4 American & English Encyclopedia of Law (2d Ed.), p. 548, it is said:   "Where the consignor draws upon his consignee for the purchase money, and the draft, with bill of lading attached, is indorsed or transferred to some one who discounts the bill of exchange, a special property in the goods thereby passes to the

transferee, subject to be divested by the acceptance and payment of the draft; and, if the consignee refuses to accept the draft, the title of such transferee becomes absolute."

Again it is said: "While the transfer of bills of lading may pass title to the goods, unless the common law has been modified by statute, these instruments are not negotiable in the sense in which the term is applied to bills and notes and other negotiable instruments of a like character. Although it has sometimes been said that a bill of lading is negotiable, nothing more is meant by this than that the transfer of the bill of lading passes to the transferee the title of the transferer to the goods described therein." Id., p. 549; *Thompson* v. *Dominy,* 14 M. & W., 403; *Baltimore R. R. Co.* v. *Wilkens,* 44 Md., 11, 22 Am. Rep., 26; *Douglas* v. *People's Bank,* 86 Ky., 176, 5 S. W., 420, 9 Am. St. Rep., 276.

Again, in 22 Am. & Eng. Encyc. of Law (2d Ed.), p. 858, it is said: "The property represented by the bill of lading may be pledged by the delivery of the bill of lading, because an assignment of such instrument gives to the assignee the means of obtaining possession. In the law of pledges, nothing is better settled than that the pledgee has a right to the possession of the property pledged until the payment of the debt secured. His right of possession is exclusive, and it yields to no other right which did not before the making of the pledge attach to the property." *Means* v. *Ran-*

Bank v. Hays.

*dall Bank,* 146 U. S., 620, 13 Sup. Ct., 186, 36 L. Ed., 1107; *Brent* v. *Miller,* 81 Ala., 309, 8 South., 219; *Newcomb* v. *Boston R. Corp.,* 115 Mass., 233; *Willets* v. *Hatch,* 132 N. Y., 41, 30 N. E., 251, 17 L. R. A., 193.

In *Means* v. *Randall Bank,* supra, it was said: "As to the four car loads named in the bill of lading, that instrument represented the cattle; and the transfer of the ownership, as well as of the right of possession, was made as effectually by the transfer of the bill as it would have been by the physical delivery of the cattle." *Conard* v. *Atlantic Ins. Co.,* 1 Pet. (U. S.), 386, 485, 17 L. Ed., 189; *Dows* v. *National Exchange Bank,* 91 U. S., 618, 23 L. Ed., 214.

"When the bill of lading was transferred and delivered as collateral security, the rights of the pledgee under it were the same as those of an actual purchaser, so far as the exercise of those rights was necessary to protect the holder." *Halsey* v. *Warden,* 25 Kan., 128; *Emery* v. *Bank,* 25 Ohio St., 360, 18 Am. Rep., 299; *Dows* v. *National Exch. Bank,* 91 U. S., 618, 23 L. Ed., 214; *Bank* v. *Homeyer,* 45 Mo., 145, 100 Am. Dec., 363; *Bank of Green Bay* v. *Dearborn,* 115 Mass., 219, 15 Am. Rep., 92; *Bank of Rochester* v. *Jones,* 4 N. Y., 497, 55 Am. Dec., 290; *Holmes* v. *German Security Bank,* 87 Pa., 525.

"The bank which makes advances on a bill of lading has a lien to the extent of the advances on the property in the hands of the consignee, and can recover from him the proceeds of the property consigned, even though the

119 Tenn.—47.

consignor be indebted to the consignee on general account; and the consignee cannot appropriate the property or its proceeds to his own use in payment of a prior debt." *Conard* v. *Atlantic Ins. Co.*, 1 Pet. (U. S.), 386; *Gibson* v. *Stevens*, 8 How., 384; 12 L. Ed., 1123; 3 Parsons on Contracts, 487; *Shaw* v. *Merchants' Nat. Bank*, 101 U. S., 557, 25 L. Ed., 892; *Yeatman* v. *N. O. Savings Inst.*, 95 U. S., 764, 24 L. Ed., 589; *Merchants' Nat. Exch. Bank* v. *McGraw*, 76 Fed., 934, 22 C. C. A., 622; *Schmidt* v. *First Nat. Bank*, 10 Colo. App., 261, 50 Pac., 733; *Fidelity Ins. Co.* v. *Roanoke Iron Co.* (C. C.), 81 Fed., 442; *Tuttle* v. *Exchange Bank*, 90 Ga., 656, 16 S. E., 955.

To the same effect are the Tennessee authorities. The delivery of the bill of lading is the symbolic delivery of the property which it represents. It was said in *Cornick* v. *Richards*, 3 Lea, 25: "Indorsement of a bill of lading is held a good delivery in performance of a contract of sale, so as to defeat any action by the buyer against the vendor for nondelivery of the goods"—citing 5 Wait's Actions & Defenses, p. 578.

In *Ochs et al.* v. *Price*, 6 Heisk., 487, it was said: "A transfer and delivery of a bill of lading vests the property in the transferee, being regarded in law as a constructive delivery of the property itself"—citing 1 Parsons on Contracts, 485; 2 Parsons on Contracts, 639; *Curry* v. *Roulstone et al.*, 2 Overt., 110, Fed. Cas. No. 3, 497; *Kirkman* v. *Bank of America*, 2 Cold., 403.

As opposed to these authorities counsel for Cheek &

Bank v. Hays.

Co. cite the case of *Saunders* v. *Bartlett,* 12 Heisk., 316, in which it appeared that: "Joyner & Son were indebted to the defendants, and it was agreed that the former should ship the bale of cotton in this case to the latter, by whom its proceeds when sold should be appropriated to the payment of the debt.    The cotton was accordingly shipped to Bartlett, Gould & Heath, as cotton factors, to be sold for this purpose.    When the boat on which it was shipped arrived at the wharf at Memphis, the bill of lading was sent to Bartlett, Gould & Heath; but before anything was done by them to reduce the cotton to possession it was attached by Saunders, whereupon the factors replevied it in this suit."    Said the court:    "We take it to be clear that the consignors were the owners of the property.    It was not a sale. The factors had no lien, either general or special, on the cotton, without actual or constructive possession.    The possession of the bill of lading was not such a possession of the cotton in this case.    It only gave the authority to reduce the cotton to possession as consignees"— citing *Woodruff* v. *N. & C. R. R. Co.,* 2 Head, 94.    See, also, *Oliver* v. *Moore,* 12 Heisk., 482.

An analysis of these cases will show that they really enunciate principles that apply to a case of factorage, and not to a case where the bill of lading has been pledged as security for an indebtedness either antecedent or concurrent.    The principles of law announced, so far as they apply to a case of factor, are unquestioned; but they are inapplicable to the case of a purchaser of a ne-

gotiable sight draft, to which bill of lading covering the property is attached, for in such cases the law undoubtedly is that the holder of the bill of lading has constructive possession of the property and may hold it against all persons acquiring liens subsequent to the transfer of the bill of lading.

This question was incidentally involved in the case of *Lewis, Leonhardt & Co.* v. *Small,* 117 Tenn., 155, 6 L. R. A. (N. S.), 887.   The facts were that Lewis, Leonhardt & Co., who resided at Knoxville, Tenn., contracted to buy from W. H. Small & Co., who resided at Evansville, Ind., ten car loads of No. 1 timothy hay at $15 per ton f. o. b. cars at Knoxville.   W. H. Small & Co. shipped ten car loads of hay to Knoxville on bill of lading issued to their own order.   They drew sight drafts on Lewis, Leonhardt & Co., payable to themselves, and attached one of said bills of lading to each of said drafts. They sold all of said drafts to the Citizens' National Bank of Evansville, Ind., for full value and in the due course of trade, and these drafts were sold in turn by said bank to the Fourth National Bank of Cincinnati, Ohio, and by it to the Mechanics' National Bank of Knoxville, Tenn., for full value and in due course of trade.   The Mechanics' National Bank presented the drafts to Lewis, Leonhardt & Co. for acceptance and payment, and they accepted and paid them all, and the drafts were delivered to them.   When Lewis, Leonhardt & Co. unloaded the hay, they discovered that it was not No. 1 timothy hay, and that it was worth $300 less than

Bank v. Hays.

the hay they had contracted to buy.   Thereupon they brought this suit, and attached the money that they had paid to the Mechanics' National Bank on the drafts. They charged that the money belonged to W. H. Small & Co., and the Fourth National Bank of Cincinnati, the Mechanics' National Bank of Knoxville, and W. H. Small & Co., were all liable to them for the breach of the contract by W. H. Small & Co. to ship them No. 1 timothy hay, and they prayed for a decree against all of the defendants for said sum of $300.   The court said:

"The theory of complainants, which was adopted by the lower courts, is that when the defendant banks purchased said drafts they became the owners of the hay and responsible for the performance of Small & Co.'s contract for its sale as to quality, quantity, and delivery, and are liable for damages to the purchaser for Small & Co.'s breach of the contract in any of said respects, although the drafts were negotiable and said banks are innocent purchasers thereof, and on presentation to the drawees, Lewis, Leonhardt & Co., they unconditionally accepted and paid the drafts."

This court held this view erroneous, saying:   "They proceed upon the incorrect theory that the bill of lading so vests the property in the indorsing banks that they are substituted to all the liabilities of the original drawer, and are the absolute owners of the property, while the true rule is that the indorsing banks, hold the bills of lading simply as collateral to secure the drafts drawn against them," etc.

Bank v. Hays.

This court further said: "There is nothing in this holding contrary to the cases of *Ochs* v. *Price*, 6 Heisk., 484, nor *National Bank* v. *Merchants' Bank*, 91 U. S., 98, 23 L. Ed., 208."

In the case last cited the purchasers of the drafts, of course, did not have actual possession of the property; but they did have its constructive possession by the assignment or transfer of the bill of lading, and, while they did not become purchasers of the property, they were pledgees of the property as collateral security for the payment of the drafts.

If the collection of drafts with bills of lading attached could be defeated by the attachment of creditors after the purchase of the drafts, the commerce of the country would be seriously obstructed. As said in *Leonhardt* v. *Small*, supra:

"It is a fact of common knowledge that a large part of the commercial business of the country is carried on through the medium of drafts, and that the immense crops of the South and West are marketed under contracts to draw for the purchase price, with bills of lading attached. If the courts shall adopt the rule insisted upon by the complainants, it will result in destroying this convenient method of handling, moving, and paying for the crops of the country; for the banks will necessarily be compelled to refuse to buy drafts with bills of lading attached, or to handle them as collateral security or otherwise."

It is said, however, on behalf of cross-complainants,

that the transaction between the complainant bank and the grain company was merely colorable, that there was no purchase of the drafts by the bank, but it was simply acting as the collecting agent of the grain company. Counsel in brief undertakes to reinforce this position by the citation of numerous telegrams from the grain company in St. Louis to the feed company and others in Chattanooga, wherein it is claimed the grain company holds itself out as the owner of the rye and offers to sell it at a discount from the prices originally fixed. It is said this evidence shows that the complainant bank was not the owner of the rye, but that the title and ownership of the same was still reserved to the grain company. It is true, as insisted, the complainant bank was not the owner of the rye, but held it under the bills of lading as security for the payment of the drafts. The grain company was, of course, interested in seeing that the bank should get the benefit of the security, since the grain company would, of course, be liable to the bank for any default in the collection of these drafts. It was, therefore, natural that the grain company should have been active in trying to prevent the diversion of the rye from the claim of the bank to the claims of attaching creditors. It is not true, as alleged in the answer, that the grain company employed counsel at Chattanooga and became responsible for the compensation of that firm in resisting the attachment of Cheek & Co.; but as a matter of fact this firm was employed by the complainant bank, and replevied the rye, and then sold it on account of said bank.

It is shown by the bank's cashier that the drafts were not taken for collection, but were purchased outright from the Young & Fresch Grain Company who were given credit therefor, and who checked against that credit. He further testified that there were no special instructions given; that the bank made the purchase of the drafts on August 24, 1902, and paid the Young & Fresch Grain Company for them. F. M. Young, a member of the grain company, testified that his firm sold these two drafts to the Third National Bank, receiving the proceeds, and then and there delivered, assigned, and transferred the drafts and bills of lading attached to the bank. He also states that his firm has had no interest therein since that date. It is alleged in the bill that these drafts were purchased in due course of trade. The answer admits that the drafts were drawn against these cars, that the bills of lading were attached, and that the drafts were discounted by the said complainant bank to accommodate its customer, the Young & Fresch Grain Company. The drafts on their face were payable to the complainant bank, with the bills of lading attached and indorsed in due course.

We are of opinion that defendants Cheek & Co. have failed to establish the averments of their answer and cross bill, and that upon the record complainant is entitled to recover the amount of the two drafts, with interest. The decree of the chancellor will therefore be reversed, and a decree entered here in accordance with this opinion. Defendants will pay the costs of the appeal.