Implement Co. v. Bank.

W. J. Barton Seed, Feed & Implement Co. *v.*
Mercantile National Bank *et al.*

(*Knoxville*.   September Term, 1913.)

1. BANKS AND BANKING.   Collection of drafts.   Nature of
deposit.   Intention of parties.

In determining whether a draft was received by a bank for col-
lection only, or whether it became the absolute owner, where
it was deposited subject to check under an agreement that if
returned uncollected the bank should charge it back to the
depositor, the intention of the parties, as evidenced by their
acts, controls.   (*Post, p.* 323.)

2. BANKS AND BANKING.   Deposit of drafts.   Conditional
sale.

Where a draft was deposited with a bank subject to check up
to its face value the same as a cash deposit, under an agree-
ment, however, that if it was returned uncollected the bank
could charge the amount of the credit back, the transaction was
at most a conditional sale of the draft to the bank, conditioned
upon the collection of the draft.   (*Post, p.* 324.)

3. GARNISHMENT.   Property subject.   Bank deposits.

Where a draft was deposited with a bank and full credit was
given to the depositor as for a cash deposit under an agree-
ment, however, that if the draft were not collected, the amount
of the credit should be charged back to the depositor, the draft
was subject to garnishment for the depositor's debts to the
extent of his interest when the garnishment notice was served.
(*Post, p.* 324.)

4. GARNISHMENT.   Bank deposits.

Where a draft deposited with a bank as a pledge for credit given
to the depositor is garnished by the depositor's creditors, the
bank must show the extent of its interest in the draft in order

to protect its own interest therein from the garnishment. (*Post, p.* 325.)

**5. CARRIERS. Bills of lading. Pledge as security.**

Where a draft made upon the purchaser of goods was deposited in a bank by the seller with the bill of lading attached, and a checking credit was given to the depositor under an agreement to charge back the amount should the draft be returned uncollected, the bill of lading was merely security for the collection of the draft, whether it were made out to the consignee or to the shipper's order. (*Post, pp.* 326, 327.)

Case cited and approved: Bank v. Hayes, 119 Tenn., 729.

---

FROM WASHINGTON.

---

Appeal from Law Court of Washington County— DANA HARMON, Judge.

GEO. C. SELLS, for plaintiff.

VINES & PRICE, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The facts, so far as it is necessary to state them, are as follows:

During the latter part of 1911, Toberman, Mackey & Co., dealers in hay and other provender in St. Louis, Mo., sold a lot of hay to Baldwin Feed & Implement Company of Johnson City, Tenn., at the price of

128 Tenn. 21

$318.50. On the 4th of January, 1912, they drew a draft on Baldwin Feed & Implement Company for this sum, in favor of Mercantile National Bank, of St. Louis, with bill of lading for the goods attached thereto. This draft was deposited in the bank, a credit therefor was entered on its books for the full face value in favor of Toberman, Mackey & Co., and also on the passbook of the latter, subject to check at the will of the depositor, in the usual way. At the same time numerous other items were deposited, aggregating, with that in question, the sum of $1,943.84. The transaction, however, affecting the draft now before us was consummated pursuant to the following course of business that had been current between the parties for three years or more: That is to say, Toberman, Mackey & Co. deposited with the bank, from time to time, drafts and checks on various points, for which they were given credit at face value, subject to check like cash deposited, with the agreement that if any of these papers should be returned at any time not collected, the bank had the right to charge back such items.

The Mercantile National Bank forwarded the draft and bill of lading to the Unaka National Bank at Johnson City, Tenn., for collection. The collection was made, but before the collecting bank could forward the money, it was attached in the hands of that bank, by garnishment process, as the property of Toberman, Mackey & Co., to enforce payment of a demand of about $295 asserted against that firm by the plain-

tiff, W. J. Barton Seed, Feed & Implement Company, of Johnson City, Tenn.

Such proceedings were had in the trial court as that the plaintiff recovered a personal judgment against Toberman, Mackay & Co., that firm having entered its personal appearance, for the sum of $200, but relief against the money attached was denied; that court adjudging that the money belonged to the Mercantile National Bank, which had intervened. The case was then appealed to the court of civil appears, where the judgment in favor of the Mercantile National Bank was reversed, and judgment rendered in favor of the plaintiff, subjecting the money attached to the satisfaction of plaintiff's debt and costs against Toberman, Mackey & Co. The case was then brought to this court on the writ of *certiorari.*

It was not shown that Toberman, Mackay & Co. had ever drawn on this deposit, or that the sum to their credit in the bank was ever at any time less than $318.50.

The question for decision is whether the Mercantile National Bank became the absolute owner of the draft, or whether the draft was received by it only for collection.

This is to be determined by the intention of the parties, as evidenced by their acts. We are of the opinion that the agreement to charge back in case the paper should be returned is a controlling consideration. It is irreconcilable with absolute ownership on the part of the bank. An agreement in advance to charge back

on failure of collection imports necessarily only a limited ownership, as in case of a bailment. Under the most extreme view, the drawing of the draft in favor of the bank, under the facts stated, could amount only to an agreement for a conditional sale of the paper; that is, that the property should belong to the bank in case collection should be made, but in case it should not be made, then the paper should revert to the drawer. At last this would be but an indirect way of stating a collection contract, when considered in connection with the deposit of the face amount of the draft, and the right accorded by the bank to check on the deposit. The substance of the transaction would be a loan of credit by the bank for the face value of the paper, based on the paper as security therefor, to be paid out of the collection when made; if not made, the paper to be returned, and the indebtedness to stand in favor of the bank, to be made good otherwise by the customer.

Some important consequences flow from this situation.

The paper is subject to garnishment for the debts of the customer, to the extent of the customer's interest at the time the garnishment notice is served. His interest is measured by the extent to which he has drawn on the deposit based on faith of the paper. If at any time there is to his credit on the books of the bank a sum less than that of the deposit, his beneficial interest in the paper is, to that extent, decreased. If at the date of the garnishment he has wholly drawn the

amount to his credit, he has no beneficial interest in the paper or its proceeds, and the garnishing creditor of the customer obtains nothing. It is the duty of the bank to show how the account stands, to the end that the extent of its beneficial interest in the paper may be known. The information is within its keeping, and it must make the facts appear. In brief, the bank holds the paper substantially in pledge for the credit extended, and it must show the extent of its interest when a creditor of the pledgor seeks to subject it as the property of the latter.

In the present case the bank has not shown that anything had been drawn from the deposit at the time the ganrishment notice was served on the Unaka National Bank. It must therefore be held that the fund collected on the draft was subject to garnishment as the property of Toberman, Mackey & Co.; the bank having under its control the amount credited to that firm, and having the right to protect itself therein.

It is insisted that when the collection was made the right of the bank in any event at that moment became absolute, and the right to charge back ceased. The right to charge back, however, at the inception of the contract, in connection with the credit then entered, determined the nature of the bank's interest. If at the date of such collection by a correspondent of the bank, and before coming to the hands of the bank, a garnishment notice is served, and the bank has paid out nothing on the deposit, it owes the customer the amount of the deposit, which it must yet pay to him or to his

creditors. It should be paid to his creditors in preference to himself, if they fasten their rights upon it in due and legal form. It is immaterial to the bank whether the deposit be garnished, or the fund which has been collected to cover that deposit. All that the bank can justly claim is that it be fully protected against loss. This protection is accomplished under the principles above stated. There may be some annoyance, and trouble to the bank, arising out of such a situation, but not more than such as may be consequent upon the creation of any pledge, and the advancing of money on the faith thereof. The bank can avoid every perplexity that may arise out of such a *status* by making an out and out purchase of the draft, bill, or note.

The parties have submitted extensive arguments on the relation of the bill of lading to the controversy. We see no occasion for this. The bill of lading was merely a security for the draft, only to be delivered to the consignee on payment of the draft. This is true whether the bill of lading be made out to the consignee directly, or to the shipper's order. In the first case, the bill of lading being attached to the draft, the consignee could obtain it only on payment of the draft. In the second case the drawee would, even upon payment of the draft, only be able to gain complete ownership of the property and rights represented by the bill of lading by having it indorsed or assigned to him by the shipper. In this latter case, it is not even necessary that a draft should accompany the bill of lading in order to protect the shipper's rights. It is sub-

ject to shipper's order, and the purchaser cannot obtain it from the carrier except upon his order. In the first case, the coupling of the bill of lading and the draft makes the sale of the goods and their delivery conditional upon payment of the draft. Under either form the rights of the seller, or of the assignee of the draft are fully protected.

It is further insisted that the present case is controlled by the case of *Bank* v. *Hays,* 119 Tenn., 729, 108 S. W., 1060, 14 Ann. Cas., 1049. This is a mistaken view. In that case it appeared there had been an out and out sale of the draft to the bank. On page 733 of 119 Tenn., on page 1061 of 108 S. W. (14 Ann. Cas., 1049), the court said: "These drafts were purchased by the complainant bank, and said grain company was given credit therefor by the bank, and checked against that credit in the regular way. According to the weight of the testimony, there was a straight purchase of these drafts by the bank; the drawers thereof reserving no interest in the property represented by the bill of lading."

The court of civil appeals reached the same result we have reached, but by a different line of reasoning. That court based its conclusion on the fact that Toberman, Mackey & Co. had shown great solicitude in the management of the matter in Johnson City, with a view to enabling the Mercantile National Bank to hold the funds collected on the draft. As pointed out in *Bank* v. *Hays,* supra, this is not a significant circumstance. "The grain company was, of course," said

the court in that case, "interested in seeing that the bank should get the benefit of the security, since the grain company would of course be liable to the bank for any default in the collection of these drafts. It was therefore natural that the grain company should have been active in trying to prevent the diversion of the rye from the claim of the bank to the claims of attaching creditors."

On the grounds stated herein, we are of the opinion that the result reached by the court of civil appeals was correct, and that its judgment should be affirmed.