[See 11 Fed. 365.]

---

CURRY (MUSSER v.).  See Case No. 9,973.

---

## Case No. 3,497.
### CURRY v. ROULSTONE et al.
Brunner, Col. Cas. 121;[1] 2 Overt. 110.]

Circuit Court, D. Tennessee.  June, 1809.

BILL OF LADING—EFFECT OF ASSIGNMENT OF.

The assignment of a bill of lading passes the property in the goods, and the consignor thereby loses the right of stoppage in transitu. and advances subsequently made by him on the transmission of the goods are not a lien on them.

In equity. The facts were that on the 6th of April, 1804, Alexander Roulstone, one of the defendants, shipped at New Orleans in the barge called Deborah, Lindsey Shannon master, a quantity of goods for account and risk of Col. Charles Lynch, of Shelby county, Kentucky, another of the defendants; to be delivered to the said Lynch or his assigns, he or they paying freight at the port of Louisville on the Ohio. On the same day, and of the above tenor, the master of the boat signed triplicate bills of lading, one of which was transmitted by Roulstone to Lynch, who assigned the same to Jorden, Banks, and Owens for a bona fide and valuable consideration, who procured the cargo to be insured in Lexington, Kentucky, on the 25th of May, 1804. The defendant, Roulstone, after having shipped the goods at Orleans, came on immediately to Nashville, and on the 2d of June, 1804, after stating himself to be the owner of the boat and cargo, em-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

ployed the complainant as his factor to descend Cumberland river to the mouth, and there receive the goods of Shannon, the master, bring them up to Nashville at the factor's expense, and sell them, receiving therefor a certain commission. The complainant upon the credit of the goods, in addition to the expense of bringing them to Nashville, advanced Roulstone $175. The goods were received at the mouth of the river from Shannon, brought up to Nashville, and stored away for the purpose of selling under the agreement which was by deed. The expenses of transporting and money advanced amounted to $718.43. Immediately after the goods were brought to Nashville by the complainant, they were claimed by Jorden, Banks, and Owens. The complainant refused to deliver them until he should be paid the amount of his advances, and Roulstone's order should be obtained. An attachment was taken out, returnable to the court of the United States, and the plaintiff summoned as garnishee to declare what property he had of Jorden, Banks, and Owens. This was discontinued, and a writ of replevin sued out of the same court; this writ commanded the marshal to replevy the goods and deliver them to Jorden, Banks, and Owens. (It is much to be doubted whether replevin would lie in this state in such a case.) The bill states that the goods were taken out of the complainant's possession by the marshal against his will, and delivered to the agent of Jorden, Banks, and Owens, who is now making sale of them; questions the legality of the proceedings by replevin; complains that he was deprived of his lien by the goods having been taken out of his hands by the marshal; prays relief generally, and particularly that Jorden, Banks, and Owens may be enjoined from selling any more of the goods until final hearing.

White & Overton, of counsel for the plaintiff, argued that the plaintiff was entitled to relief to the amount of his advances, for which he had a lien, and as he did not voluntarily part with the goods, he should not lose the benefit of it. It was admitted that the plaintiff never inquired for a bill of lading, not having been customary in trade at Nashville to ask or require one; and the course of business at particular places will be noticed by the court. Strange, Rep.; 2 Johns. 327. That possession by Roulstone was evidence of property. Bull. N. P. 47; 1 Morg. Essays, 401, 402; 1 Bac. Abr. 604, 605; 1 Atk. 245. It was insisted that, let the goods belong to whom they might, the plaintiff had a lien, having acted bona fide and according to the course of trade at the place, and for this were cited: Snee v. Prescot, 1 Atk. 245; 2 Burrows, 931–943; 3 Bos. & P. 490; 3 East, 590; 3 Term R. 122, 123; 3 Bos. & P. 420; 1 Esp. 240; 6 East, 43; Lex Mercatoria Americana, 392, 398; Bull. N. P. 130; Cow. 251. See, also, 2 Johns. 541; 3 Johns. 341. Supposing, however, that it

were necessary for the plaintiff to show that Roulstone had a legal right to dispose of the goods, it was contended that the goods having been shipped by him at Orleans, he had a right to stop them in transitu, the bill of lading not being negotiable as a bill of exchange; that the shipper was not bound to show on what ground he stopped the goods. 3 East, 398; Id. 363; 1 Term R. 745; Id. 66; 1 H. Bl. 366, 369, 506; 4 East, 217; 1 Bos. & P. 564; 5 East, 178; 2 Bos. & P. 46; 1 Mer. Am. 164; 3 Term R. 761; 1 H. Bl. 606; 2 Term R. 70. Vide, 3 Caines, 182; 5 Mass. 487; Camp. 282.

Mr. Whiteside, on the part of Jorden, Banks, and Owens, the assignees of the bill of lading, contended that Roulstone, after the goods were shipped, had no property in or power over them whatever, and that the plaintiff could not acquire any lien on the goods delivered by such a person, no more than if they had been stolen. Dub. see general doctrine of stoppage in transitu. The property of the goods followed the bill of lading, and was in Jorden, Banks, and Owens by assignment. Contra, Camp. 108, 309; 2 Hayw. (N. C.) 227 [Ogden v. Witherspoon, Case No. 10,461]. The plaintiff was in fault in not asking for a bill of lading before he received the goods. Whether the action of replevin were proper or not, was not the inquiry. The question simply was, whether the plaintiff could obtain a lien on the goods under the circumstances disclosed; he certainly could not, and therefore his bill must be dismissed.

The arguments used by the plaintiff's counsel were answered at great length, and the following authorities relied on: 1 Ld. Raym. 271; 1 Term R. 205; 4 Burrows, 2046; 2 Term R. 63.

In reply it was said that the cases in 4 Burrows, 2046, and 1 Term R. 205, do not show clearly the point decided, and the doctrine otherwise advocated was overruled and explained by 4 Burrows, 2680; 1 Term R. 659; 2 Term R. 63; 1 H. Bl. 359; 1 Bos. & P. 7.

The cause having been twice argued, once before M'Nairy, J., before the establishment of the present circuit court, and at June term, 1807, before Todd and M'Nairy, JJ., the opinion of the court was now delivered by

TODD, Circuit Justice, after stating the case, observed that there were two kinds of bills of lading (it is probable the distinction here alluded to by the judge lies between a bill of lading for, on account of, and at the risk of the consignee; and on account of and at the risk of the consignor), and that the bill of lading before the court seemed to be different from the one referred to in Mason v. Lickbarrow, 1 H. Bl. 357. In the principal case, the property of the goods was transferred to Lynch, and from him to Jorden, Banks, and Owens. The defendant Roulstone had

no right to dispose of them as he did. There was no ground of relief against Lynch, or Jorden, Banks, and Owens; and as to Roulstone we cannot decree against him; having been no party to the suit at law, and never having been a resident or citizen of the district, there is a want of jurisdiction. The bill must be dismissed as to all the defendants. (The doctrine respecting mercantile lien may be seen and examined by recurrence to the authorities referred to at the bar and in the margin.)