Nicholson, C. J.,
delivered’the opinion of the court:
On the 6th of January, 1868, J. H. McCain deposited in the Gayoso Savings Bank $1,851.04-, to the credit of J. H. & E. J. McCain, the latter being tire wife of the former. On the 11th of January, 1868, J. Ii. McCain checked out $50.00, leaving in bank to his credit -and that of his wife $1,801.04.
On the 16th of January, 1868, Hill, Cossitt & Talmage, creditors of J. TI. McCain, sued out an attachment in the law court of Memphis against him as ¡a nonresident of Tennessee, and procured a garnishment to be served on the Gayoso Savings Bank, whereby all the credits and effects of J. H. McCain in that bank were attached in the bank as garnishee. Under this garnishment the money deposited in the name of J. TI. & E. J. McCain remained in the bank until the 5th of February, 1868, when the bank failed and the deposit became worthless. When the attachment was served the bank officer made an entry on tbe books, “No more checks to be paid.”
On tbe ,12th of January, 1869, E. J. McCain, by ber next friend, J. TI. McCain, filed ber bill in the chancery court at Memphis, to make Hill, Cossitt & Talmage liable for the loss of the deposit aforesaid, upon the ground that the money belonged to her, and not to J. TI. McCain; and that it was lost- in consequence of its being illegally attached, and thereby detained in the bank by tbe procurement of TIill, Cossitt & Talmage until it was finally lost by tbe failure of tbe bank. She alleges that before defendants attached the money they knew it was the property of complainant, and if they did not then know it, they were *657 afterwards so informed, but persisted in claiming tbe right to appropriate it as the property of J. H. McCain.
Defendants seek to avoid responsibility by denying that they knew the deposit in question belonged to complainant, and insisting that they only sought to attach whatever credits or effects J. H. McCain had in the bank; without procuring this specific deposit to be attached, and insisting, also, that when this deposit was attached as the property of J. H. McCain, the responsibility devolved upon the bank, as garnishee, to decide the ownership of the money, and that as the bank continued to hold it until its failure, without deciding its ownership, the bank alone, was responsible, and not defendants.
It is true that the garnishment process sought in general terms to reach whatever credits or effects J. H. McCain had in the bank, but it is equally truq that J. H. McCain had no other deposit in the bank, and that the proceeding was instituted and prosecuted to reach the deposit in the name of J. II. & E. J. McCain, under the assumption that it belonged to J. II. McCain, and the object of the garnishment was to test the ownership of this deposit. On this question the answer is evasive, although the bill charges that the garnishment was instituted to reach this specific deposit; but the proof is satisfactory that this deposit was attached in the hands of the bank, that it was attached as the property of J. II. McCain, and that in so attaching it the sheriff acted under the direction of defendants.
It is clear, therefore, that if the deposit belonged to E. J. McCain, its attachment as the property of J. II. McCain was illegal, and being attached at the instance of defendants, they are equally responsible with the sheriff for the conversion by means of a misapplication of legal process. 1 Chitty Pl., 185; Wilkins v. Gilmore, 2 Hum., 140; Stiles v. Davis, 1 Black, 101.
It is no answer that the sheriff’s return shows only that he attached all the effects of I. H. McCain in the hands of *658 tbe bank. Tbe proof shows only that be attached all tbe effects of J. H. McCain, or that bis return was false, and that in so doing be was controlled by tbe directions of Hill, Cossitt & Talmage.
Tbe trespass ivas in tbe misapplication of tbe process, and this misapplication cannot be evaded by a false or equivocal and ambiguous return. His return is conclusive only as between the parties and privies to tbe suit, but merely prima facie as to all others (Hillard on Remedies for Torts, 393), and in equity may be shown to be false. Ridgeway v. Bank of Tennessee, 13 Hum., 523.
This raises a question as to tbe ownership of tbe deposit. Without looking to tbe deposition of J. H. McCain, tbe husband of complainant, who was incompetent h> testify, we think tbe evidence of josiah Slack shows a prima facie case of ownership of $1,500 of tbe deposit. Slack’s wife bought land in Mississippi, which E. J. McCain claimed, and paid her $1,500 thereon, which he saw J. IT. McCain deposit in tbe bank in the name of J. H. & E. J. McCain. His understanding from the parties was that J. H. McCain had tbe money as agent of E. J. McCain, and it was to go towards paying for the homestead on which they, then lived, and tbe manner of making the deposit shows that he was not depositing the money exclusively on his own account. As this money was. the proceeds of land claimed by E. J. McCain, and was in possession of J. H. McCain as her agent, the presumption is that she was the owner of the money, and it devolved upon defendants to rebut this presumption, by showing that the land belonged to J. IT. McClain, and not to his wife. No such proof is made or attempted, and we are authorized to conclude, that $1,500 of the money deposited belonged to E. J. McCain.
As to the balance of the deposit of $301, there is no 'evidence showing that it was the property of E. J. McCain, except that of J. H. McCain, which is incompetent, and the fact that the deposit is in the name of J". IT. &• E. J. *659 McCain, although complainant alleges (and the fact is-probably so) that it was her money. We must conclude therefore that of the deposit $1,500 belonged to> E. J".. McCain and $301 to J. H. McCain, not as partners, but as joint owners or tenants in common of the deposit.
As J. EL & E. J. McCain did not own the deposit as partners, it was competent for Hill, Cossitt & Talmage, as creditors of J. EL McCain, to subject his share of the deposit by attachment and garnishment of the bank. Drake on Attachments, sec. 572, citing Theuenlike v. DeWolf, 9 Pick., 120. See Waddell v. Cook, 2 Hill (N. Y.), 47.
But instead of seeking satisfaction of this debt against E. El. McCain, by attaching only his share of the deposit, they attached the whole deposit as the property of J. El. McCain, denying the right of E. J. McCain to any part thereof, and insisting’ that J.. H. McCain was the sole owner, although the deposit was in their joint names.
In his testimony, General Chalmers, after stating the unsuccessful efforts made by him as solicitor of E. J. McCain to have the deposit released from the attachment, says: “Soon after the bank failed, I then called bn J. M. Elill, one of the plaintiffs, and told him that the money he had stopped in the Gayoso Bank belonged to Mrs. E. J. McCain, but that if he would give her up the judgment plaintiffs held against her husband (for about $1,400), she would not sue them for the loss of the money. Mr. Elill refused, and said that he was requested to attach the money by Mr. Burford, who was security for McCain, and that Burford was responsible to him; that Burford told him if he did not attach the money, and test the right -of Mr. McCain to it, he would claim a release as McCain’s security.” This evidence shows conclusively that when ETUI, Cossitt & Talmage attached, they were informed as to Mrs. McCain’s claim to the money, that they attached the whole deposit and prosecuted the suit for the purpose of testing McCain’s title to it. Et fixes also the fact that the sheriff *660 acted under the direction of Hill, Cossitt & Talmage in attaching the whole fund, and thus impounding it for their benefit, and that they were not merely seeking to^ reach part of the deposit as J. H. McCain’s portion.
W e therefore think it clear that, although it was competent for them to have attached J. H. McCain’s portion, yet as they attached the whole of it as his property, and procured the sheriff to impound the portion of Mrs. McCain as well as that of McCain, they are responsible for the extent that they acted beyond J. li. McCain’s portion of the deposit, unless they can be relieved, of this responsibility on some of the grounds relied on.
1. The first ground of defense is, that the sheriff was ordered by the writ attach only the credits and effects of J. H. McCain, anid that in fact none other was attached, and that the responsibility rested on the garnishee, the bank, to determine the ownership .of the deposit, and if Mrs. McCain’s money was thus wrongfully detained by the garnishee, the bank alone is liable to her.
This ground of defense is not tenable, either upon the proof or on the law. We have seen that, on attaching the whole deposit, the sheriff acted under the direction of defendants; they assumed that the deposit belonged to J. H. McCain, and had it attached by the sheriff for the purpose of testing his title. After thus procuring the money to be impounded, it does not lie in their mouths to say that it devolved upon the garnishee to determine who was the owner of the deposit. The service of the garnishment fixed the deposit in the bank until it should answer, and upon its answer the question of title could be determined alone by the court This was the legal effect of the garnishment, and the garnishee had no other responsibility but to hold the fund subject to the order of the court, when its answer should be made. In such case the garnishee cam determine the question only at its own risk, and in violation of *661 the duty imposed on him by law. Stiles v. Davis, 1 Black, 101.
2. It is maintained by defendants that failure of the Gayoso Bank, and the consequent loss of the deposit, was not the proximate result, or in any way attributable in a legal point of view, to the serving of the garnishment, requiring the bank to hold the deposit. It is true that the issuing of the attachment, and the serving of the garnishment could scarcely have had any effect in producing the failure of the bank, which was the immediate cause of the deposit becoming valueless. But this is assuming that the deposit would have continued in the bank, if no attachment had issued and been served. This assumption, however, is contradicted by the proof, which shows unusual diligence in trying to have the money released from the garnishment for the purpose of being appropriated in payment of a specific debt. 'We think it fully appears that, but for the garnishment, the deposit would have been withdrawn and the money saved. But, the garnishment was the immediate cause of the continuance of the. money in the bank, and as the bank failed while the garnishment continued to operate, it is manifest that this was the proximate cause of the loss of the money. “No wrongdoer can be allowed to apportion or qualify his own tvrong; as a loss has actually happened while his ‘wrongful act was in operation 'and force, and which is attributable to his wrongful act, he cannot set up as an answer to the action the bare possibility of a loss if his wrongful act had neier been done.” Davis v. Garrett, 6 Bingh. Rep., 713; Sedgwick on Damages, 83.
3. The next defense is, that after the garnishment was served the complainant instituted a replevin suit against the sheriff to recover her money, and that the coroner returned that he had replevined the money and delivered the same to complainant, and that this suit was abandoned after the bank failed, and was dismissed for want of prosecution. It is a sufficient answer to this defense that the proof, which *662 is competent,' fullv shows that the return, of the coroner was false, the money never having- been in the hands of the sheriff,' but all the time in the bank under the garnishment. 11 Hum., 523.
4. It appears that on the first of February, 1868, after complainant had failed to get possession of her money by her replevin suit, J. H. McCain executed a replevy bond in the original attachment suit, and the clerk, thereupon, made an order releasing the levy of the attachment. This order is relied on by defendants t,o show that the money was ho longer held by the bank under the garnishment.
This was essential to give it any effect; and even then it would have been no release of the liability of the defendants already incurred by the original trespass and conversion, unless it had been shown that complainant accepted the release, and thereby waived her right to¡ hold defendants responsible. ' No such'proof was made, but on the contrary, the proof is that the money continued in the bank, held by the garnishment,"until the bank failed. Besides, complainant is shown to have been a nonresident, and [after]' the release by the clerk, it does not appear that she could have withdrawn the deposit before the failure of the bank' — some five, days only hairing elapsed before the bank failed.
5. It is not necessary to discuss the effect of his mixing of his'own funds with those‘of E. J. McCain in making the deposit by J. IT. McCain, as this could in no view affect her title to her portion of the money; nor to> allude to the cases in which a party may honestly prosecute an unfounded claim without subjecting himself to damages to' the party so sued. The doctrine of these cases does not apply to damages arising from the wrongful seizure or conversion of the property of third persons.
Upon the whole cáse we are of opinion that complainant is entitled to relief as to $1,500 of the money deposited, and interest from the date of the seizure, against Hill, Cossitt & Talmage.
*663 The decree oí the chancellor will, therefore, be reversed, and a decree- be rendered here for the amount indicated, together with the costs of the canse.