GROVELAND BANKING CO. *v.* CITY NAT. BANK.

(*Knoxville.*   September Term, 1921.)

1. **BANKS AND BANKING.**  Collecting bank, refusing to remit proceeds, has burden of proving defenses.

Where defendant collecting bank admitted collection of a draft, and that the draft was payable on its face to complainant bank, which sent it for collection, defendant, to escape responsibility, had the burden of establishing defenses made.  (*Post, p.* 527.)

2. **BANKS AND BANKING.**  Bank purchasing draft and bill of lading is absolute owner of draft.

Where bank purchased draft and bill of lading, it became the absolute owner thereof, and the proceeds of the draft in the hands of a collecting bank were not garnishable, by creditor of the drawer of the draft, as the property of the latter.  (*Post, pp.* 527-532.)

Cases  cited and approved:  Curry v. Roulstone, et al., 2 Tenn., 110; Kirkman v. Bank of America, 42 Tenn., 403.

Cases  cited  and  distinguished:  Bank v. Hays, 119 Tenn., 729; Means v. Randall Bank, 146 U. S., 620;  Cornick v. Richards, 71 Tenn., 25; Ochs et al. v. Price, 53 Tenn., 487.

3. **EVIDENCE.**  Court not bound by conclusion of witness.

In suit by bank as owner of draft and bill of lading, statement of cashier of complainant, to the effect that complainant purchased outright the bill of lading and draft, was a conclusion of the witness, not binding on the court, which might look to the whole transaction as related by the witness to ascertain whether or not as a matter of law it did constitute an absolute purchase by his bank of the draft and bill of lading.  (*Post, pp.* 532-538.)

4. **BANKS AND BANKING.**  Option of charging back draft if uncollectible does not affect bank's title if proceeds of draft drawn out by customer.

Groveland Banking Co. v. City Nat. Bank.

Where bank credits its customer's account with the amount of a draft secured by bill of lading, and the amount of such credit is drawn out by the customer, the bank's title to the draft is absolute, and is not rendered conditional by the fact that the customer agrees that the draft, on failure to collect, may be charged back against his account, for, by withdrawing the amount to his credit, any beneficial interest of the customer in the draft ceases. (*Post, pp.* 532-538.)

Case cited and approved: Implement Co. v. Bank, 128 Tenn., 320.

5. **CONSTITUTIONAL LAW.** Garnishee not protected by judgment where owner of property garnished not a party.

The principle protecting a garnishee who has been compelled to pay a debt to another after full disclosure of material facts known to him in compliance with the judgment of a court of competent jurisdiction can have no application, where the owner of the property attached is not before the court; for to hold that one not a party to the proceedings can be deprived of his property by an attachment adjudicating the ownership of the property to be in another would be to deprive the person of his property without due process of law. (*Post, pp.* 539-542.)

Cases cited and approved: McCain v. Hill, 3 Shan. Cas., 654; Miller v. McClain, 18 Tenn., 245.

Case cited and distinguished: Connor v. Allen, 40 Tenn., 19.

6. **GARNISHMENT.** Answer of garnishee conclusive.

If garnishee's answer does not contain admissions sufficient to charge him, he must be discharged; as, for instance, where he answers that he does not know whether he is indebted or not, or his answer is not sufficiently specific. (*Post, pp.* 542, 543.)

Code cited and construed: Sec. 4831 (S.).

7. **ATTACHMENT.** Owner not concluded by proceedings to which not a party.

The owner of property is not concluded by proceedings to attach the property, to which proceedings he is not a party. (*Post, pp.* 543, 544.)

8. **ATTACHMENT.** Where abandoned does not affect rights.

Where attachment of a carload of beans was purely a paper levy, in that the railroad refused to deliver the beans unless the bill of lading was taken up and the freight paid, so that the continued possession of the railroad was by virtue of its contract under the bill of lading, and not as agent of the attaching officer, and the attachment was abandoned, in that by agreement of the parties the beans were surrendered and turned over to the consignee thereof, who was allowed to receive them upon payment of draft held by a bank, and the parties elected to proceed against the bank, for the proceeds of the draft, by garnishment proceedings, rather than against the property they had undertaken to attach, the attachment did not affect the rights of the parties. (*Post, pp.* 543, 544.)

9. **ESTOPPEL.** Receipt of notice of facts constituting estoppel must be shown.

In suit by bank owning and forwarding a draft for collection for failure of defendant collecting bank to remit proceeds, payment to another of such proceeds by defendant as garnishee in proceedings to which complainant was not a party could not be justified on the ground that complainant was estopped because defendant notified complainant of the garnishment proceedings and asked for advice as to what defense should be made and received no response, where there was no proof that complainant actually received such notification, but merely testimony that such a letter had been written. (*Post, pp.* 544, 545.)

10. **ESTOPPEL.** Failure to instruct correspondent bank as to defense in garnishment did not relieve it from making complete answer.

In suit by bank owning and forwarding a draft for collection for failure of defendant collecting bank to remit proceeds, payment to another of such proceeds by defendant as garnishee in proceedings to which complainant was not a party could not be justified on the ground that complainant was estopped because defendant notified complainant of the garnishment proceedings and asked for advice as to what defense should be made and received no response, where the defendant failed to make a complete answer

to the garnishment proceedings, as by showing that the draft had been sent to it directly by complainant, and was, on its face, payable to complainant, for the defendant owed complainant the duty of setting up such facts, even without specific direction as to what answer to make. (*Post, pp.* 545-547.)

FROM KNOX

Appeal from the Chancery Court of Knox County.— Hon. Chas. Hays Brown, Chancellor.

Lucky, Jones & Andrews, for Groveland Banking Co.

Green & Webb, for City National Bank.

Mr. L. D. Smith, Special Judge, delivered the opinion of the court.

The Groveland Banking Company, located at Groveland Station, N. Y., on the 26th of November, 1918, forwarded to the City National Bank of Knoxville, for collection, a draft for $800, which had been drawn in their favor by one of their customers, Ewart & Lake, merchants of Groveland Station, N. Y., on H. C. Bondurant Company of Knoxville. This draft was received by the City National Bank in due course, and by it collected from the drawee on January 7, 1919. The City National Bank refused to remit the proceeds of the draft, and thereupon the Groveland Banking Company filed the original bill in this cause against the City National Bank to collect the same.

In addition to the facts above stated the bill alleges that the draft had attached thereto a bill of lading covering a shipment of beans made by Ewart & Lake to the Bondurant Company at Knoxville, and that the draft with the bill of lading attached was for a valuable consideration and in the usual course of business purchased by the complainant from the said Ewart & Lake.

The defendant City National Bank undertakes to justify its refusal to remit the proceeds of this draft which it collected, and defends, by way of answer, upon the following facts alleged to exist:

On December 24, 1918, Chastain, Smith & Co., merchants at Knoxville, Tenn., filed an original bill in the chancery court at Knoxville against Ewart & Lake, the drawers of this draft, in which it was alleged that Ewart & Lake were indebted to Chastain, Smith & Co. in the sum of $555.14, growing out of the purchase of some beans which proved to be of less value than they had been compelled to pay for them. An attachment was sued out by the bill, and it was attempted to have the attachment levied upon the carload of beans, which had been shipped by Ewart and Lake to H. C. Bondurant Company. On January 7, 1919, Chastain, Smith & Co. filed an amended and supplemental bill in the same cause, making the defendant City National Bank a party thereto. In this amended and supplemental bill it was alleged that the railway company had refused to deliver the beans unless the bill of lading was taken up and the freight paid, and in order to avoid this complication an agreement had been made between Chastain, Smith &

Co. and H. C. Bondurant Company by which the latter was to pay the $800 draft and the freight and thus procure the bill of lading.

Under this agreement the proceeds of the draft in the hands of the City National Bank was sought to be reached, under a prayer that the City National Bank be directed and ordered to pay the funds into the hands of the receiver in that case, a receiver having previously thereto been appointed.

The City National Bank answered this amended and supplemental bill, admitting that Ewart & Lake had drawn a draft on H. C. Bondurant & Co. for the sum of $800, payable through the City National Bank, and that this draft was sent for collection through the Groveland Banking Company, and the same was paid on the 7th day of January 1919. The defendant City National Bank expressed its readiness to pay the money to the party or parties entitled to it, or to abide by the orders of the court made in the case. On January 30, 1919, the chancery court in that cause made an order, directing the City National Bank to pay the money which had been collected from the draft to the receiver, and in this order it was provided:

"That on the payment of the same to said receiver it be released from liability and the receiver will retain said funds subject to the orders of the court to be made in this cause."

Subsequently, and on February 14, 1919, a judgment *pro confesso* was taken against Ewart & Lake, and a final decree entered thereon, granting to Chastain, Smith & Co. a judgment against Ewart & Lake for $559.30, and

directing the, funds which had been paid into the hands of the receiver by the City National Bank to be applied on the judgment. There was a surplus of the money paid into court which the receiver was directed to pay over to the City National Bank as the agent of Ewart & Lake.

Upon this state of facts it is contended for the defendant:

(1)   That the judgment of the chancery court in the cause of *Chastain, Smith & Co.* v. *Ewart & Lake* affords complete protection against any claim to the funds which they collected in favor of the complainant, Groveland Banking Company.

(2)   That the Groveland Banking Company did not in fact purchase, and was not the owner of the draft and bill of lading, but that it was the property of Ewart & Lake.

(3)   That the Groveland Banking Company had actual notice of the attachment proceedings aforesaid, and failed to take any steps to intervene therein until after the money had been paid into court under order pronounced in the proceedings aforesaid, and that therefore the complainant is now estopped to compel the defendant to pay the money again to it.

(4)   That the beans for the purchase price of which this draft was drawn had been attached as the property of Ewart & Lake, and by virtue thereof the beans became the property of the sheriff, and therefore that the defendant was not a garnishee in the usual legal sense, except as an agent under orders of the court in handling said funds.

The decree of the chancellor merely shows that: "From the consideration of all which the court holds and decrees that the complainants have failed to make out their case, and are not entitled to the relief sought in their bill."

From that decree the complainant appealed to the court of civil appeals, which latter court affirmed the decree of the chancellor, in effect sustaining all of the contentions made by the defendant bank.

The defendant City National Bank having admitted the collection of this draft, and that it was payable on its face to the complainant, must, in order to escape responsibility, carry the burden of establishing the defenses made.

The first inquiry is whether the complainant was in reality and in good faith the actual owner of this draft and bill of lading. If the complainant did not own it, then Ewart & Lake did, and the defendant bank can successfully defend upon the ground that it had paid the money into court under a proceeding to which the owners of the draft were parties. The only evidence as to the ownership of the draft and bill of lading is that found in the testimony of Mr. Brown, the cashier of the Groveland Banking Company. From his testimony we learn that Ewart & Lake were customers of theirs, and had shipped a lot of beans to H. C. Bondurant Company at Knoxville, Tenn., had made a draft of $800 therefor on the consignee, and attached thereto the bill of lading issued by the carrier. This draft was made payable to the Groveland Banking Company, who indorsed it and transmitted it to the defendant bank for collection. Mr.

Brown says that his banking company purchased this draft and bill of lading, and that it immediately became the absolute owner thereof.

If it be conceded that Mr. Brown's statement to the effect that his banking company purchased outright this bill of lading and draft is conclusive of the fact, then the defendant bank has failed to establish its contention, under the authority of *Bank* v. *Hays,* 119 Tenn., 729, 108 S. W., 1060, 14 Ann. Cas., 1049.

That was a replevin action, brought by the bank to recover the possession of two cars of rye which had been attached as the property of the grain company. The grain company had sold the grain in the suit, one car to Chattanooga Feed Company and the other car to Cheek & Co., of Chattanooga. Upon the arrival of the grain in Chattanooga it was attached by Cheek & Co. to satisfy an alleged indebtedness against the grain company. The bank asserted its right to the possession of the rye by reason of being the purchaser of the sight drafts drawn by the grain company, to which bills of lading were attached. The facts in that case, as shown by the following quotation from the opinion of the court, are:

"These drafts were purchased by the complainant bank, and said grain company was given credit therefor by the bank, and checked against that credit in the regular way. According to the weight of the testimony, there was a straight purchase of these drafts by the bank; the drawers thereof reserving no interest in the property represented by the bills of lading. . . .

"It is shown by the bank's cashier that the drafts were not taken for collection, but were purchased outright

from the Young & Fresch Grain Company, who were given credit therefor, and who checked against that credit. He further testified that there were no special instructions given; that the bank made the purchase of the drafts on August 24, 1902, and paid the Young & Fresch Grain Company for them. F. M. Young, a member of the grain company, testified that his firm sold these two drafts to the Third National Bank, receiving the proceeds, and then and there delivered, assigned, and transferred the drafts and bills of lading attached to the bank. He also states that his firm has had no interest therein since that date. It is alleged in the bill that these drafts were purchased in due course of trade. The answer admits that the drafts were drawn against these cars, that the bills of lading were attached, and that the drafts were discounted by the said complainant bank to accommodate its customer, the Young & Fresch Grain Company. The drafts on their face were payable to the complainant bank, with the bills of lading attached and indorsed in due course."

In holding upon this state of facts that the complainant bank was entitled to recover the amount of the draft with interest, the court quoted with approval from various cases and authorities certain principles which had been announced, such as the following:

"In 4 American & English Encyclopedia of Law (2 Ed.), p. 458, it is said: 'Where the consignor draws upon his consignee for the purchase money, and the draft, with bill of lading attached, is indorsed or transferred to some one who discounts the bill of exchange, a special property in the goods thereby passes to the transferee,

144 Tenn.—34

subject to be divested by the acceptance and payment of the draft; and, if the consignee refuses to accept the draft, the title of such transferee becomes absolute.'

"Again it is said: 'While the transfer of bills of lading may pass title to the goods, unless the common law has been modified by statute, these instruments are not negotiable in the sense in which the term is applied to bills and notes and other negotiable instruments of a like character. Although it has sometimes been said that a bill of lading is negotiable, nothing more is meant by this than that the transfer of the bill of lading passes to the transferee the title of the transferer to the goods described therein.' . . .

"Again, in 22 Am. & Eng. Encyc. of Law (2 Ed.), p. 858, it is said: 'The property represented by the bill of lading may be pledged by the delivery of the bill of lading, because an assignment of such instrument gives to the assignee the means of obtaining possession. In the law of pledges, nothing is better settled than that the pledgee has a right to the possession of the property pledged until the payment of the debt secured. His right of possession is exclusive, and it yields to no other right which did not before the making of the pledge attach to the property.' *Means* v. *Randall Bank,* 146 U. S. 620, 13 Sup. Ct., 186, 36 L. Ed., 1107. . . .

"In *Means* v. *Randall Bank, supra,* it was said: 'As to the four carloads named in the bill of lading, that instrument represented the cattle; and the transfer of the ownership, as well as of the right of possession, was made as effectually by the transfer of the bill as it would have been by the physical delivery of the cattle.' . . .

" 'When the bill of lading was transferred and delivered as collateral security, the rights of the pledgee under it were the same as those of an actual purchaser, so far as the exercise of those rights was necessary to protect the holder.' . . .

" 'The bank which makes advances on a bill of lading has a lien to the extent of the advances on the property in the hands of the consignee, and can recover from him the proceeds of the property consigned, even though the consignor be indebted to the consignee on general account; and the consignee cannot appropriate the property or its proceeds to his own use in payment of a prior debt.' . . .

"To the same effect are the Tennessee authorities. The delivery of the bill of lading is the symbolic delivery of the property which it represents. It was said in *Cornick* v. *Richards,* 3 Lea, 25: 'Indorsement of a bill of lading is held a good delivery in performance of a contract of sale, so as to defeat any action by the buyer against the vendor for nondelivery of the goods'—citing 5 Wait's Actions and Defenses, p. 578.

"In *Ochs et al.* v. *Price,* 6 Heisk., 487, it was said: 'A transfer and delivery of a bill of lading vests the property in the transferee, being regarded in law as a constructive delivery of the property itself'—citing 1 Parsons on Contracts, 485; 2 Parsons on Contracts, 639; *Curry* v. *Roulstone et al.,* 2 Overt., 110, Fed. Cas. No. 3,497; *Kirkman v. Bank of America,* 2 Cold., 403. . . .

"If the collection of drafts with bills of lading attached could be defeated by the attachment of creditors after the purchase of the drafts, the commerce of the

country would be seriously obstructed. As said in *Leonhardt* v. *Small*, supra:

" 'It is a fact of common knowledge that a large part of the commercial business of the country is carried on through the medium of drafts, and that the immense crops of the South and West are marketed under contracts to draw for the purchase price, with bills of lading attached. If the courts shall adopt the rule insisted upon by the complainants, it will result in destroying this convenient method of handling, moving, and paying for the crops of the country; for the banks will necessarily be-compelled to refuse to buy drafts with bills of lading attached, or to handle them as collateral security or otherwise.' "

The court is not bound by this conclusion of the witness, but may look to the whole transaction as related by him to ascertain whether or not as a matter of law it did constitute an absolute purchase by his bank of the draft and bill of lading. If appears from his testimony that the draft was made payable to the banking company and delivered to it, and the proceeds thereof credited to the account of Ewart & Lake, who were authorized to immediately draw upon the account by checks. However, this was done in view of a custom which prevailed between the banking company and these customers of theirs, and with the understanding that if the draft and bill of lading were returned to the customer, and thereby the customer recovered control and right to make disposition of the goods covered by the draft and bill of lading, the amount thereof would be charged back to the customer.

Upon this state of facts the defendant contends that the case falls within and is governed by the decision of this court in the case of *Implement Co. v. Bank,* 128 Tenn., 320, 160 S. W., 848.

In that case all the parties to the transaction, as well as the creditor who sought to reach the proceeds of the draft and bill of lading, were before the court; whereas in the present case only the forwarding bank and its correspondent, the collecting bank, are before the court. Toberman, Mackey & Co. sold a lot of hay to Baldwin Feed & Implement Company at Johnson City, and drew a draft on the latter company for the price thereof in favor of the Mercantile National Bank of St. Louis, bill of lading for which was attached thereto. The Mercantile National Bank forwarded the draft with bill of lading to the Unaka National Bank of Johnson City, who collected the draft. While the money was in the hands of the bank at Johnson City an attachment proceeding was instituted by the Implement Company against Toberman, Mackey & Co. and the money in the hands of the bank at Johnson City was attached. The Mercantile National Bank intervened in that case, and asserted its ownership of the draft and bill of lading, and therefore the proceeds in the hands of the bank at Johnson City, so that everybody concerned, in claiming this fund, was before the court in such a way that everybody's rights could be protected.

When Toberman, Mackey & Co. made the draft they deposited it with the bank at St. Louis, and a credit therefor was entered on the books of the bank for full face value in their favor, and was subject to check at

the will of the depositor in the usual way. It appeared, however, that the particular transaction was had in pursuance of the regular course of business between the parties—"that is to say, Toberman, Mackey & Co. deposited in the bank from time to time drafts and checks on various points, for which they were given credit at face value, subject to check like cash deposited, with the agreement that if any of these papers should be returned at any time not collected, the bank had the right to charge back such item."

It will be observed that the transaction in that case is identical with the transaction in this case, except that in this case the understanding between the bank and Ewart & Lake was that, if the draft and bill of lading were returned to the customer, and thereby the customer recovered the control and right to disposition of the goods covered by the draft and bill of lading, the amount thereof would be charged back to the customer.

There is another important and material difference between this case and that of the *Implement Co.* v. *Bank*, 128 Tenn., 320, 160 S. W., 848, and that is this:

Toberman, Mackey & Co. had made no checks upon the credit which they had received upon their account with the bank when the proceeding was begun. The bank had in its possession, with which it could protect itself, the full amount of the draft which its customer had made in its favor; whereas in the case at bar Ewart & Lake before the attachment proceeding in this case was begun had checked out their entire deposit with the bank. On at least two different dates prior to the commencement of the suit the account of Ewart & Lake was overdrawn,

and on the date of the commencement of the garnishment proceedings against the City National Bank Ewart & Lake had credit of considerably less than the amount of the draft.

All the parties interested in that case being before the court, and the court having reached the conclusion that the bank had in its hands a sufficient amount of money to protect it, it was held that the proceeds of the draft were subject to garnishment by creditors of the drawer. The reasoning of the court by which it reached the decision stated will be seen from the following quotation taken from the opinion:

"The question for decision is whether the Mercantile National Bank became the absolute owner of the draft, or whether the draft was received by it only for collection.

"This is to be determined by the intention of the parties, as evidenced by their acts. We are of the opinion that the agreement to charge back in case the paper should be returned is a controlling consideration. It is irreconcilable with absolute ownership on the part of the bank. An agreement in advance to charge back on failure of collection imports necessarily only a limited ownership, as in case of a bailment. Under the most extreme view, the drawing of the draft in favor of the bank, under the facts stated, could amount only to an agreement for a conditional sale of the paper; that is, that the property should belong to the bank in case collection should be made, but in case it should not be made, then the paper should revert to the drawer. At least this would be but an indirect way of stating a col-

lection contract, when considered in connection with the deposit of the face amount of the draft, and the right accorded by the bank to check on the deposit.

"The substance of the transaction would be a loan of credit by the bank for the face value of the paper, based on the paper as security therefor, to be paid out of the collection when made; if not made, the paper to be returned, and the indebtedness to stand in favor of the bank, to be made good otherwise by the customer.

"Some important consequences flow from this situation.

"The paper is subject to garnishment for the debts of the customer, to the extent of the customer's interest at the time the garnishment notice is served. His interest is measured by the extent to which he has drawn on the deposit based on faith of the paper. If at any time there is to his credit on the books of the bank a sum less than that of the deposit, his beneficial interest in the paper is, to that extent, decreased. If at the date of the garnishment he has wholly drawn the amount to his credit, he has no beneficial interest in the paper or its proceeds, and the garnishing creditor of the customer obtains nothing. It is the duty of the bank to show how the account stands, to the end that the extent of its beneficial interest in the paper may be known. The information is within its keeping, and it must make the facts appear. In brief, the bank holds the paper substantially in pledge for the credit extended, and it must show the extent of its interest when a creditor of the pledgor seeks to subject it as the property of the latter.

"In the present case the bank has not shown that anything had been drawn from the deposit at the time the garnishment notice was served on the Unaka National Bank. It must therefore be held that the fund collected on the draft was subject to garnishment as the property of Toberman, Mackey & Co.; the bank having under its control the amount credited to that firm, and having the right to protect itself therein." *Implement Co.* v. *Bank,* 128 Tenn., pp. 323-326, 160 S. W. 848.

We are of the opinion that the decision in *Implement Co.* v. *Bank* does not apply in the present case, and is not controlling for these reasons:

The only possible qualification of the right and title of the bank to the draft and bill of lading was the right of the customer to call for a return of the draft and repay what he had received from the bank, and this right depended upon the customer never having received the proceeds; that is to say the customer had no right in the draft or in the bill of lading after he had appropriated the money which the bank had placed to his credit. When he drew upon his credit, that was an acceptance of the money, and completed the transfer of the title and made the bank the absolute owner. The only condition to the unqualified ownership, being that created by the agreement made at the time, giving to the bank the right to return the draft and charge the customer therewith, ceased when the customer took from the bank the money placed to his credit, and the ownership of the bank became absolute.

If the banking company had paid the money over to its customer, instead of depositing it to the customer's

credit, the purchase and ownership of the bank would have been complete. The customer then would have had no interest whatever in the draft or bill of lading. The agreement upon the part of the bank to charge its customers with the amount of the draft on a certain contingency contemplated that the customer would have the funds in the bank against which the charge could be made. After the customer has drawn the money out which was placed to his credit, the same result follows as if the banking company had paid for the draft at the time of its delivery.

The difference between this case and the one relied upon to sustain the contention of the defendant is vital. We have here the very situation which it was held in that case necessary to complete, a transfer and ownership of the draft.

It is not a case to which can be applied the language of the court: "If at the date of such collection by a correspondent of the bank, and before coming to the hands of the bank, a garnishment notice is served, and the bank has paid out nothing on the deposit, it owes the customer the amount of the deposit, which it must yet pay to him or to his creditors"—for the reason that in the case at bar the bank had entirely paid out the deposit which was made before any suit had been started to reach the proceeds of the draft, thereby making applicable the language of the court:

"If at the date of the garnishment he has wholly drawn the amount to his credit, he has no beneficial interest in the paper or its proceeds, and the garnishing creditor of the customer obtains nothing."

The contention by the defendant that it is protected by the judgment or decree of the court ordering the money paid over to the court is unsound, for the reason that the complainant was no party to the proceedings in which the judgment or decree was pronounced. It is fundamental, if not axiomatic, that a judgment is binding only on the parties to the judgment. Ordinarily, of course, a garnishee, who has been compelled to pay a debt to another after full disclosure of material facts known to him, in compliance with a judgment of a court of competent jurisdiction, is protected, but this principle can have no application where the owner of the property attached is not before the court. To hold that one who is not a party to the proceedings can be deprived of his property by an attachment adjudicating the ownership of the property to be in another would be to deprive the person of his property without due process of law. Authorities upon the soundness of this proposition are abundant.

In Shinn on Attachment and Garnishment, the rule is laid down as follows:

"It is a self-evident proposition that no judgment is *res adjudicata* as to matters which have not been adjudicated. The rights of no person are *res adjudicata* unless such person has been a party to the proceedings legally determined by the court. Therefore where property or effects have been attached in the possession of the garnishee, as the property of the principal defendant, a judgment rendered to that effect will not be conclusive against a person who claims adversely to such principal defendant and who has not been made a party to the

suit. If the indebtedness was not to the principal defendant, a judgment against the garnishee will not bind his actual creditors. They may thereafter bring suit against him, or their creditors may bring garnishment against the garnishee.'' 2 Shinn on Attachment and Garnishment, section 727.

In another section, the same author further says:

''It is a well-known rule of law, not only applying to bills of exchange but to all drafts and orders, whether negotiable or otherwise, and whether written or oral, that an order or direction to pay a certain fund to a third person becomes an absolute assignment of that fund to such third person upon such order or direction being accepted by the holder of the fund. If, therefore, one who is made a garnishee in a garnishment proceeding have theretofore accepted an oral or written order to pay such fund to another than the original debtor, he cannot properly be held liable for the payment of the same to the plaintiff in a garnishment proceeding in an action against the principal defendant, the assignor. The garnishee may neglect his duty to disclose the effect of the assignment in his answer, and thereby cause a judgment to be entered against him in favor of the plaintiff, but the payment of such judgment will not relieve him from liability to payment again of the same demand to the assignee of the fund. By accepting the order he became absolutely indebted to the assignee of the fund, and permitting himself to be held liable thereafter by judgment in garnishment, and making voluntary payment thereof, will not relieve him from such obligation.'' 2 Shinn on Attachment and Garnishment, section 717.

In Drake on Attachment the rule is stated as follows:

"When, by a court having jurisdiction of the action and of the garnishee, judgment is rendered against him, and he has satisfied it in due course of law, such judgment is conclusive, against parties and privies, of all matters of right and title decided by the court, and constitutes a complete defense to any pending or subsequent action by the defendant against the garnishee, for the amount which the latter was compelled to pay; and this though the court be a foreign tribunal. Of course, such a judgment cannot affect the rights of any one not a party or privy to it." Drake on Attachment, section 706.

In Ruling Case Law the rule is stated: "The judgment against the garnishee in garnishment proceedings is effective against the rights of third persons, not parties to the proceedings, only in so far as judgments in other cases are effective against third persons. For example, judgment against the garnishee, adjudging property in his hands to belong to the defendant in the proceedings, does not conclude a third person, not a party to the proceedings, who claims title to the same property." 12 R. C. L., p. 856.

The same rule is held in our Tennessee cases. In the case of *Connor* v. *Allen,* 3 Head, 19, the supreme court says:

"In Tennessee, however, the garnishee's liability is determined solely by his answer, which is held to be conclusive. But this rule has never, to our knowledge, been extended beyond the particular contest between the garnisher and garnishee, and the answer cannot be re-

garded as concluding other .parties—certainly not one who is a stranger to the procedure.''

In the, case of *Smith* v. *Leonard,* the supreme court had under consideration this identical question. In discussing the ·case the court said :.

''On the other hand, it has been held in many adjudicated cases that if· the amount in controversy be more than $50, the answer of the garnishee is conclusive, but whom does it conclude, and as to what is it conclusive? It is only conclusive as between the garnishor and garnishee, and not as to a stranger to the proceeding.'' *McCain* v. *Hill,* 3 Shan. Cas., 654.

See, also, *Miller* v. *McCain,* 10 Yerg., 245.

The argument in support of the defendant's contention is that an innocent garnishee may be wrongfully compelled to account for property in his hands twice. This contention overlooks the fact that the garnishee is in a perfect situation to protect himself. If he conceives himself to be in a situation of that sort, he can easily protect himself by having brought into court all persons interested in the fund. He can usually protect himself by his answer.。 To authorize a judgment against the garnishee, his indebtedness must clearly appear in so many words or from admitted facts which show his liability as a legal consequence. If the answer does not contain admissions sufficient to charge him, the garnishee must be discharged. For instance, if the garnishee anwer that he does not know whether he is indebted or not, or if his answer is not sufficiently specific he must be discharged. See authorities cited in note 3, section 4831, Shannon's Code.

In this case if the defendant had answered setting up the facts which were within its knowledge, no judgment could have been rendered against it; that is to say, if the bank had shown in its answer to the court that this draft was made payable to the Groveland Banking Company, from whom defendant received it and to whom it was to account, and that it did not know whether the banking company was the owner of the draft or whether it belonged to the drawers thereof, no judgment could have been pronounced on such an answer or, if such judgment should by error be pronounced, the Groveland Banking Company could have been brought into court and required to set up its rights, if any it had, and in this way the defendant bank could have been afforded ample protection against the payment of the money twice.

It is contended that defendant bank was not a garnishee in the ordinary legal sense, but that, by reason of the fact that the shipment of beans had been attached and the custody thereof placed in the hands of a receiver, the action of the bank was nothing more than that of agent of the court to turn over the funds. There are two answers to this contention. In the first place, the complainant banking company, not being a party to the attachment proceedings, could no more be held liable under that sort of a proceedings than in a direct judgment against the bank as garnishee. In the next place, the attachment of the beans was abandoned. By agreement of the parties, the beans were surrendered and turned over to the consignee thereof, who was allowed to receive the beans upon the payment of the draft held

by the bank. The parties to the proceeding elected to proceed against the defendant bank rather than against the property which they had undertaken to attach. There was, in reality, no attachment levied upon the beans; it was purely a paper levy; the beans remained in the possession of the railroad company, and their possession of the beans was not as an agent of the officer—they were holding the beans by virtue of their contract, which prohibited them from delivering them except upon surrender of the bill of lading.

Finally, it is contended by the defendant bank that the complainant is estopped because the defendant on January 7th notified the complainant that garnishment proceedings had been served on it in the suit of Chastain, Smith & Co. against the drawer and alleged owner of the draft, and asking for advice as to what defense, if any, complainant wanted the defendant to make, and that the complainant made no response to this notification.

There are two reasons why this contention is unsound. In the first place, there is-no proof whatever that the complainant bank ever received this alleged letter of January 7, 1919. The cashier of the defendant bank testifies that he wrote such a letter and placed it in an envelope, to be mailed according to the custom of the bank. It is not even shown that this letter was deposited in the United States mail. It is shown that no such letter or notice was ever received by the complainant. To entitle the defendant to bind the complainant by an estoppel, it must be shown that the complainant actually received notice of the facts alleged as con-

stituting an estoppel. It is not sufficient that defendant made an effort to furnish the information, but must show that the information was actually received.

Even if the complainant had received this letter of January 7, 1919, it would still have been the duty of the defendant to make a complete answer to the garnishment proceedings. In other words, the complainant had the right to rely upon the defendant setting forth in its answer in the garnishment proceedings the full facts, and, if all the facts had been set forth in the answer and judgment had been rendered against the defendant and it compelled to pay the money then it would be the fault of the complainant, and complainant could not call upon the defendant to pay again.

The mere fact that the complainant made no response to this communication did not relieve the defendant bank from making an answer in full keeping with known facts nor authorize an answer which would necessarily result in a judgment against it. The defendant bank very well knew that this draft had been sent to it directly by the complainant; knew that the draft was payable to the complainant. It also knew that it was common practice of banks to purchase outright drafts of this character, and it must be taken to know that under the law the ownership of the draft would depend upon the real understanding between the parties at the time the draft was made payable to the bank. These facts were not disclosed in the answer of the bank. What the bank did say is:

"On November 25, 1918, the defendant Ewart & Lake drew a draft on H. C. Bondurant & Co., for the sum of
144 Tenn.—35

$800, payable through this defendant, and attached thereto bill of lading for the beans in question in this case; said bill of 'lading providing for an examination of the beans before paying the draft.

"This draft was sent to this defendant for collection through the Groveland Banking Company of Groveland, N. Y., and same was paid to this defendant by H. C. Bondurant Company on the 7th day of January, 1919, and on the day the bill was filed; and this defendant now has said sum of $800 in its possession, ready to pay over to the party or parties entitled thereto, or to abide by the orders of the court made in this cause as to the disposition of said sum of money."

There is no intimation in the answer that the complainant, to whom the draft was payable, had any interest whatever in the draft, but the necessary inference is that the draft belonged to Ewart & Lake, and that they had sent the draft for collection, and that the Groveland Banking Company was merely the agent of Ewart & Lake, the owners of the draft, to transmit the same for collection. Nowhere in this answer is there any intimation of any other relationship existing between the defendant bank and the complainant. If the defendant bank had answered that this draft was draw in favor of the complainant, and that the complainant had sent it to the defendant for collection, that it did not know Ewart & Lake in the transaction, and that it was liable to account to the complainant from whom the draft had come, or that it did not know whether the draft belonged to Ewart & Lake or whether it belonged to the complainant, then the complainants in the garnishment pro-

ceedings would have been compelled, before requiring the defendant bank to pay the money, to bring into court the Groveland Banking Company and have an adjudication of the ownership of the draft. The defendant bank owed to the complainant the duty of setting up these facts, even though it had no specific information from the complainant about what answer to make. The defendant was not justified in concluding from the information they had, or from the failure of the bank to answer their letter, that the complainant had no interest in the draft at all. Certainly it cannot rely upon estoppel based upon notice of the suit having been given, as is pleaded here, without having made a full disclosure in its answer of all the facts within its knowledge, and that it did not do.

For the reasons set out, the decree of the chancellor and of the court of civil appeals must be reversed, and judgment here rendered in favor of the complainant for $800, the amount received by the defendant bank from said draft, with interest from the date of the filing of the bill, and all the costs of the cause.